## GENERAL ELECTRIC SUPPLY COR-PORATION v. MAYTAG CO.*
### No. 11234.

Circuit Court of Appeals, Eighth Circuit.
Dec. 15, 1938.

William H. Davis, of New York City (Charles M. Blackmar and Roy P. Swanson; both of Kansas City, Mo., and Dean S. Edmonds and Charles W. Riley, both of New York City, on the brief), for appellant.

Wallace R. Lane, of Chicago, Ill. (Nelson E. Johnson, of Kansas City, Mo., on the brief), for appellee.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from the decree in favor of appellee, plaintiff below, in a suit for infringement of patent No. 1,866,779, which was issued to plaintiff, Maytag Company, assignee of Howard F. Snyder, July

*Rehearing denied Jan. 14, 1939; writ of certiorari granted 59 S.Ct. 591, 83 L.Ed. ——.

12, 1932, on an application filed by Snyder June 14, 1922. The suit involves claims 23, 26 and 29 of this patent, which the lower court held valid and infringed by defendant's washing machines, Models AW-19 and other models sold and used by it. The claims are set out in the margin.[1]

Only the question of validity is involved, infringement being conceded. The type of machine embodied in the Snyder patent was designated by him, and has come to be known as the "gyrator" type. It is made up of a tub with a smooth interior surface free from rubbing projections, mounted on legs, and an imperforate water impeller having a circular base provided with a central dome and plurality of upwardly projecting blades, each of which is of substantial height and lateral area. The impeller is of substantially less diameter than the interior of the tub. It is placed in the bottom of the tub in such a manner that its margin is equally spaced a substantial distance away from the upwardly projecting portion of the tub to permit the vigorously impelled currents of water to flow outwardly, then upwardly along the wall of the tub, and then inwardly and downwardly to the impeller, first in one direction and then in the opposite direction from the impeller to

---

[1] 23. A washing machine comprising in combination, a tub for containing cleansing liquid and materials to be cleansed, said tub having a bottom portion and an upwardly extending wall portion, the interior surface of which is free from rubbing projections, a rotary reciprocatory impeller mounted in the tub adjacent its bottom, having a base and a plurality of blades, each of which is of substantial height and lateral area, and a central portion projecting upwardly from the base, the upper surface area of the base being considerably less than the horizontal cross-sectional area of the tub through its upwardly extending portion, the margin of said base being spaced a substantial distance away from the upwardly extending portion of the tub, said tub and impeller being so constructed and positioned relative to each other that when the impeller is rapidly reciprocated each blade and its adjacent portion of the impeller base will simultaneously drive the cleansing fluid in one and then an opposite outward upward circulatory direction toward and around the clothes, and act in cooperation with the interior of the tub to cause violently flowing opposed currents of liquid to meet and flow inwardly and downwardly toward the central portion of the tub, and substantially suspend the materials in the fluid while being washed, a rotary reciprocating drive shaft extending upwardly through the bottom of the tub into the interior thereof for supporting the impeller for movement in a fixed plane, and power means for rapidly reciprocating the shaft and impeller for the purposes set forth.

26. In a washing machine for cleansing fabrics by forcing cleansing fluid through them while substantially suspended by the action of the fluid, as distinguished from pulling or pushing the fabrics through the fluid or against scrubbing surfaces, or otherwise scrubbing them by mechanical means, a tub, a substantially imperforate rotary reciprocatory impeller mounted to operate in a fixed plane having blades of substantial height and area projecting therefrom in a direction toward the fabrics while they are being cleansed, said tub and impeller being so constructed and arranged as to cooperate while the impeller is in operation for whipping the fluid and violently forcing it outwardly, upwardly and in a general vertical and circulatory movement and circumferentially of the tub first in one and then in an opposite direction and through and around the materials, and substantially suspending the materials in the fluid while being washed, and power means for rapidly reciprocating the impeller.

29. In a washing machine, a tub adapted to contain cleansing liquid and materials to be cleansed, a rotary reciprocatory impeller mounted adjacent the bottom of the tub, comprising a substantially imperforate base of substantial area and blades of substantial height and lateral area projecting from the body of the impeller toward the materials while being washed, said impeller and tub being so constructed and arranged that they will cooperate, when the impeller is rapidly reciprocated, to cause the liquid to be positively forced outwardly, upwardly and circumferentially along the interior of the tub in one general direction, and then outwardly, upwardly and circumferentially along the tub in the opposite general direction, whereby the materials being washed will be cleansed, the change in direction of movement of the impeller being accomplished suddenly and forcibly to whip the liquid and vigorously force it first in one direction and then in the opposite direction through and around the materials while substantially suspended therein by the action of the liquid, and power means for rapidly reciprocating the impeller.

provide a free roll-over zone for the clothes between it and the interior of the tub as the clothes were suspended by the vigorous water action created by the impeller. The impeller is mounted for operation in a fixed plane adjacent the bottom of the tub on a reciprocating drive shaft which extends downwardly from its central dome through the bottom of the tub. A pinion is provided at the lower end of the reciprocating drive shaft which is connected to a motor by a rack bar whereby the impeller can be rapidly reciprocated. By thus mounting the water impeller at the bottom of the tub, and so forming, constructing, and positioning it with respect to the tub, and operating it at a much higher speed than theretofore used in washing machine practice, Snyder washed clothes clean by the vigorous water action created by the impeller, while suspended by the action of the water, in a very short time as compared with previous machines and without the wear and tear incident to their use, and washed even the most delicate fabrics without injury.

In sustaining the claims in suit, the trial court entered elaborate and detailed findings of fact. It will be observed that the claims involved are machine claims only.

Defendant seeks reversal on substantially the following grounds: (1) The claims in suit are invalid for anticipation by Davis patent 1,240,826 of September 15, 1917, the Davis and Doughty patent 1,496,305 of June 3, 1924, and the commercial machines manufactured and sold under those patents by 1900 Company in the years 1917 to 1922, by the Miller machines of 1916 and 1919, and for lack of invention in view of these patents and machines and the earlier machines of the patents of Ferguson, King, Runkle, Hanna, Jardine, Hermance, Groat, Morse, Henin and Mills; (2) the patent is invalid because of the retention in the patent of the method claim 39, which it is contended had been disclaimed by plaintiff.

Long prior to the prosecution of Snyder's application for patent there had been great activity in this field. The washing of clothes has been a problem ever since their use. In primitive times this was accomplished by rubbing and squeezing the clothes in water by hand or by pounding them on rocks after they had been submerged in water. Then came the washboard or rub-board type; then the peg dolly type, having pegs which contacted the clothes and dragged them back and forth against corrugations in the tub; then followed the so-called oscillating type, which tumbled the fabrics against ribs and corrugations in the tub; then the cylinder type and the so-called vacuum cup type, which compressed the fabrics and squeezed them against the tub bottom. For many years attempts were made to improve each of these types of machines, especially the peg dolly type, and there was more or less litigation over these improvements. These various types of machines proved to be more or less effective, but it was found that all of them involved injury and wear and tear upon the washed articles. The problem sought to be solved was to produce a machine that would wash the clothes without this injury to them, and this is the problem which it is claimed was solved by Snyder in his invention. In that part of the patent describing the structure, purpose and working of his invention, it is, among other things, said:

"By my invention, the washing and cleansing of such objects is not only made possible, but practicable, such that most delicate and frail objects can be handled mechanically during the washing operation without marring their character and beauty. * * * One of the principal objects of this invention resides in providing this improved method of and apparatus for cleansing fabrics without bringing them into substantial rubbing contact with the walls of the tub or the liquid agitating mechanism."

The mechanism has already been sufficiently described, but of its operation and claimed results, much is said in the patent. It is there said: "Due to the construction and arrangement of the tub, gyrator and driving mechanism, this machine provides a decidedly new method of cleaning fabrics, in that while the clothes are washed thoroughly, this is done by the action of the water itself on the materials as distinguished from their being rubbed or drawn through the water by a dolly or other mechanism, or tumbled against the sides of the tub or rubbed against projections on the interior of the tub. In my machine the clothes are driven and swirled about in and by the water in the interior of the smooth tub. The materials never come in any substantial contact with either the tub, or the gyrator which initially causes the agitation, seething and surging of the water on the interior of the tub. The peculiar movement of the water caused by the action of my gyrator in operation largely prevents

rubbing the clothes against the container or gyrator and eliminates the deterioration of the materials being washed by it."

Further describing the action of the water upon the clothes, it is said: "In this way the washing and washable materials are given a turbulent swirling action. As a result of this action imparted to the cleansing liquid by the gyrator, the water in turn imparts a similar action to the fabrics. Goods are thus whipped, whirled and dashed around in the sieving, whirling, turbulent action set up by the gyrator. Thus the fabrics are given a quick, snappy, sieving, whirling, reversing double action, produced by the gyrator, doubling the clothes first one way and then the other until every thread in the fabric is acted upon an untold number of times, somewhat like the cracking of a whiplash in all directions."

Patent 1,240,826, known in the record as the Davis patent, issued September 25, 1917, on application filed February 29, 1916. This is the patent upon which defendant chiefly relies to support its claim of anticipation. In the specifications of Davis, it is said:

"One of the objects of the invention is to provide an agitator having a novel arrangement of ribs or vanes on the lower or active face thereof and which operate to direct the water outwardly by centrifugal force, thereby setting up a circulation downwardly within the tub adjacent the wall thereof, and thence upwardly through the fabrics in the tub and to the center of the space below the agitator.

"A further object is to provide an agitator designed to float upon the water contained within the tub and the ribs on which will not only serve to set up a circulation of water as stated, but will also rub lightly upon the fabrics without danger of injuring them.

"A still further object of my invention is to provide means in connection with the agitator disk to prevent churning of the washing fluid, and other means also in connection with said disk to cause the fluid flow lines to substantially conform to the shape of an elongated loop depressed intermediate its ends."

The operation of the machine is described as follows: "In using the agitator the tub is partly filled with water, after which the disk 2 is placed above the fabrics in the tub so as to float upon the water. The disk is then rotated backwardly and forwardly and during this movement the ribs 4 and 6 will have two functions. First they will throw the upper portion of the water by centrifugal force toward the wall of the tub, thus creating a suction under the center of the disk, with the result that the water displaced upwardly by this suction will force its way through the fabrics and will create a circulation inwardly adjacent the bottom of the tub and downwardly adjacent the wall thereof. Thus the fabrics will be thoroughly cleaned without being pulled and distorted, the circulation of the water through the fabrics resulting in the removal of the dirt therefrom. In addition to the foregoing the ribs will act as rubbing elements inasmuch as they will engage lightly with the fabrics thereunder."

While the application for the Snyder patent was pending in the patent office, the Davis and other patents on which defendant relies (except Hermance and Runkle) were considered by the patent office, and it was held that none of these patents showed or described the Snyder invention covered by the claims in suit.

The issuance of a patent is prima facie evidence of both novelty and utility, and one who attacks its validity must carry the burden of proof, and every reasonable doubt will be resolved in favor of the validity of the patent. Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217.

The lower court, convinced by oral testimony and demonstrations before it, held that the machine made under the Snyder patent washes by water action. The court also found, "That the machine shown in the Davis patent will not operate or wash clothes in a manner described in its specification is further shown by the testimony of defendant's fact witnesses, by plaintiff's demonstration of these machines before the court, and by the testimony of plaintiff's and defendant's witnesses."

If these findings are sustained by substantial evidence, then the Snyder patent may not be held invalid for anticipation by the Davis patent, even though the Davis patent contains some element or thought which Snyder used in solving the problem which Davis was seeking to solve. A new combination of old elements whereby a new and useful result is produced, or an old result is obtained in a more facile, economical, and efficient way, is protected by a patent. Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 8 Cir., 215 F.

362. If the language of the Davis patent be considered anticipatory, we are still confronted with the question as to whether the combination of elements in his patent produced the result claimed. A patent for an invention which successfully accomplishes a useful result is not void for anticipation or prior use because of a prior device, however similar in construction or close in resemblance to that of the patent, where such prior device was not operative and failed to produce the result claimed, which is produced by the device of the patent. In re Coykendall, 58 App.D.C. 280, 29 F.2d 868.

Defendant contends that the findings of the lower court on these matters are not sustained by substantial evidence. It appears from the teaching of the Davis patent that the agitator was supposed to and did operate as a rubboard. It was of substantially the same diameter as the interior of the tub. It was mounted in the cover so as to slide, as all previous rubboard machines, and was operated at slow speed. When clothes and water were placed in the tub and the rubboard put in operation, it slid down into contact with the clothes and compressed them between the bottom and the sides of the tub and rubbed the mass, compressing and dragging it against the interior of the tub. Owing to the rounded cleats on this rubboard, there would be some circulation of water, but the patent shows that the circulation was through the fabrics, and the difference between the machines is emphasized by the statement in the Davis patent that the object of the invention is to provide means in connection with the agitator disk "to prevent churning of the wash fluid." This would indicate a slow movement of the water. In the Davis patent, the disk is to float upon the water. Both the testimony and a demonstration showed that while the rubboard or disk will generally float upon the water before the machine is started in operation, it will immediately thereafter descend into and compress the clothes and drag them about the interior of the tub. The Snyder patent, on the other hand, embodies a construction in which, when in operation, the violently flowing, vigorous currents of water are relied upon to wash and suspend the clothes while the operation is being carried on. There was testimony that clothes washed in the Davis machine were washed by the rubbing action of the rubboard, and the rubbing of the mass against the corrugated interior of the tub, and that there was a relatively small amount of water motion and considerable rubbing.

Mr. Taggart, an expert called by the defendant, testified that in the Davis machine, the clothes were washed "by rubbing, pounding, squeezing, and dragging." Other expert witnesses for the defendant testified that the action of the Davis machine was substantially identical with all rubboard type machines on the market prior to 1922 and now abandoned. Mr. Doughty, a witness called for the defendant, testified that the mass of clothes was rubbed and scrubbed on both sides between the tub and the agitator of the tub, and that as the agitator moved down it would contact and compress the clothes between the rubboard and the bottom and sides of the tub, and that in this way there was a rubbing action of the clothes on the top, bottom and sides, and that the idea of this was to carry out the old idea of rubbing clothes. This witness in a letter to his company's patent attorney, on March 23, 1921, before there was any controversy, pointed out that in operation the Davis machine was of the rubboard type. In the course of that letter he said: "The vanes on the agitator when in motion cause the water to flow from the center toward the side of the tub. Consequently, the center is lowered and the agitator, which is only held in position by floating upon the water, or by the supporting effect of the clothes, is drawn down with the result of compressing the clothes, restraining their free movement and increasing the power required to operate the washer."

Davis said he heartily endorsed everything that was said by Doughty in this letter. Doughty also testified that in the operation of the Davis machine, the clothes remained in a state of rest in the center of the tub, and at the time these machines were being sold by the manufacturer, it was the custom to stress the loading of as many clothes in them as the tub would hold for each operation. This manner of operation is opposed to that of the Snyder invention, which places importance upon not placing too many clothes in the tub at any given time so as to impede the circulation of water and the washing movement which it generates in the clothes.

Mr. Behan, an expert familiar by actual experience with the machines made under the Davis patent, testified that they operated in the same manner as all of the old

abandoned rubboard type machines. He described the operation of the machines as follows: "When the tub was filled as per manufacturer's specifications, we expected there would be water above the surface of the clothes, and as the agitator or scrubboard was lowered and the motor turned on, the agitator threw the water out to the sides of the tub, and then it went down through and up again. That allowed the agitator to lower itself. As the water came up part of it climbed on top or got on top of the agitator and helped to submerge it into the clothes, and in its washing action there was a relatively small amount of water motion and considerable rubbing."

We think the findings of the lower court are sustained by abundant evidence. While speed of movement may not in itself involve invention, yet when it is considered that in the rubboard type of machine, the agitator, or other moving part coming into contact with the clothes, had to operate slowly in order to avoid tearing, and that delicate fabrics could not be washed in them, the fact that Snyder's claims called for speed in oscillation is significant as indicating a change. There is no such idea suggested in the Davis patent.

██ There is no merit in the contention of the defendant that the claims in the Snyder patent, wherein the adjective "substantial" is used to indicate the height and lateral area of the impeller blades, and the distance of the outer edge of the impeller from the walls of the tub, are bad for indefiniteness. They must be considered in connection with the drawings and specifications and the earlier devices, and so considered we think they are sufficient. Eibel Process Co. v. Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523.

█ The Doughty and Davis patent, No. 1,496,305, is also relied upon as anticipating Snyder. As to this patent the lower court found, (1) that Snyder made an invention and reduced it to practice more than eight months before there was any disclosure of the machine shown in the Doughty and Davis patent; (2) that the machine of the Doughty and Davis patent does not utilize the Snyder invention. The first of these findings is based upon testimony of witnesses appearing in open court. An examination of this testimony convinces us that it is substantial. As the finding is dependent upon the credibility of witnesses,

the rule announced by the Supreme Court in Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356, is applicable. It is there said [page 170]: "Considering that a patent has been granted to the plaintiff, the case is pre-eminently one for the application of the practical rule that so far as the finding of the master or judge who saw the witnesses 'depends upon conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable.' Davis v. Schwartz, 155 U. S. 631, 636, 15 S.Ct. 237, 39 L.Ed. 289, 291. The reasons for requiring the defendant to prove his case beyond a reasonable doubt are stated in the case of The Barbed Wire Patent, 143 U.S. 275, 284, 12 S.Ct. 443, 450, 36 L.Ed. 154, 158."

The Doughty and Davis machine was an attempt to overcome certain defects in the Davis device, or defects incident to its use. In this machine there is an agitator or rubboard of substantially the same diameter as the interior of the tub, but mounted at the bottom of the tub. There is just enough space around the circumference of the rubboard to permit it to operate on the interior of the tub. On the upper surface of the rubboard there are six equally-spaced triangular rubbing cleats approximately seven-eighths inch in height, grouped about one side of the rubboard base, and a wide space left between the nearest two on the opposite side of the base. This rubboard was operated at the same speed as the rubboard machine of the Davis patent. The oral testimony introduced in the lower court showed that it was made to overcome difficulties incident to the use of the Davis machine, in which the agitator sunk in the water and restricted the free movement of the clothes, and in which the agitator was "drawn down with the result of compressing the clothes" and "restraining their free movement." It provided unsymmetrically arranged vanes to prevent the clothes from remaining in a state of rest at the center of the tub. There was nothing in this patent to suggest or intimate the vigorous flow or action of the water or substantial suspension of the clothes in the water while the washing operations were going on. In fact, it appears from the testimony that in the use of the unsymmetrically arranged vanes, there was a more or less quiet zone in the washer created by the lack of vanes, and that the outflow between the widely

spaced vanes was less than it was at other points, so that it made a less movement of water at the place affected by the wide separation of vanes. The machine made under this patent was abandoned by the 1900 Company after it had made approximately seven hundred of them. The testimony shows, and the court found, that with respect to the operation of this machine, the clothes were pounded, rubbed, dragged and squeezed in the washing operation. The 1900 Company, after experimenting with the Doughty and Davis device, abandoned it in 1922 and adopted instead the Snyder device, and has sold hundreds of thousands of them. . The Snyder patent, as found by the lower court, was clearly distinguishable from the structure and operation of the Doughty and Davis machine.

The Jardine patent, No. 18,202 of 1891 is a British patent. The inventor claimed as his invention, "the use, in circular washing machines with a revolving or reciprocating dolly, of a nonrevolving hoop or rim arranged with flanges and sockets, stayed and controlled by perpendicular pins and supported on springs * * *," and, "the use, in circular washing machines with a revolving or reciprocating dolly, of a grooved ring or a groove arranged with perpendicular pins and springs * * *." This is a dolly type of machine. Being a foreign patent, to be anticipatory, it must have described the invention in such full, clear and exact terms as to enable any person skilled in the art to practice it without the necessity of experimentation. Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217. There is nothing in this device to suggest a solution of the problem solved by Snyder. The dolly of the machine is said to be operated from the top, and has a series of vertical ribs or projections throughout its entire length. The tub has a series of wide vertical ribs extending from the top of the interior of the tub to a point slightly above the bottom. It was clearly a rubbing and scrubbing machine. It contained no suggestion of washing clothes while substantially suspending them in water by vigorous water action, or washing them by water action, as distinguished from rubbing, pounding, squeezing, compressing, and dragging them, as was done by the dolly type of machines of 1891 and subsequently. We think there is nothing in the teaching of this patent to suggest Snyder's device.

The other patents referred to as anticipating Snyder's invention have been examined, but they clearly do not anticipate Snyder, and a consideration of them would serve no useful purpose.

The patent in suit originally contained three claims, Nos. 1, 38, and 39, which, in different terms, defined the method of washing clothes. In Maytag Co. v. Brooklyn Edison Co., 2 Cir., 86 F.2d 625, plaintiff charged infringement of Claim 38. The court there held this claim invalid. Certiorari was denied by the Supreme Court, 300 U.S. 662, 57 S.Ct. 493, 81 L.Ed. 870. Plaintiff then disclaimed Claims 1 and 38, asserting that through inadvertence, accident or mistake, the patentee in them had claimed more than that of which he was the original or first inventor or discoverer. Claim 39, not relied upon in this suit, was not disclaimed and defendant contends that the neglect of plaintiff to disclaim Claim 39, or to make any effort to sustain it as valid in this suit, renders the patent wholly void and unenforceable.

Method Claim 39 did not define the same method as set forth in Claim 38. In Claim 38, the method is described as a "method of washing fabrics by forcing cleansing liquid through and around them while substantially suspended by the action of the fluid." Claim 39 includes as part of its operation the step of causing the fabrics "to be freely moved about," which is not specified in Claim 38. Claim 39 appears to be essentially different from Claim 38.

Section 65, Title 35, U.S.C.A., provides that whenever, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, a patentee has claimed more than that of which he was the original inventor or discoverer, he may be permitted to make disclaimer of such parts of the thing patented as he shall not choose to claim or hold by virtue of his patent. Section 71, Title 35, U.S.C.A., permits the patentee to maintain a suit on his patent, although through inadvertence, accident, or mistake, and without any wilful default or intention to mislead the public, he has claimed some material or substantial part as an invention of which he was not the original or first inventor. He is deprived of the right to recover costs, unless he filed proper disclaimer before commencement of his suit, and is entitled to none of the benefits of the section if he has unreasonably neglected or delayed to enter a disclaimer.

In Ensten v. Simon, Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453, the Supreme Court held that where one claim of a patent was declared invalid, the trial court might refuse a decree sustaining the others until there was a disclaimer as to the invalid claim, or a prompt appeal. Each claim of a patent is deemed to be for a separate invention. Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805. The disclaimer as to Claims 1 and 38 was not an admission that they were anticipated or invalid. Permutit Co. v. Wadham, 6 Cir., 13 F.2d 454; Nelson Mfg. Co. v. F. E. Meyers & Bro. Co., 6 Cir., 29 F.2d 968. In Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949, construing the disclaimer statute, the court said [page 648]: "The statute permits the patentee to abandon by disclaimer parts of the patent which he does not choose to claim, and if the disclaimer is timely and adequate it authorizes him to maintain suit for infringement of the separable parts which he does choose to claim."

A patentee, in disclaiming, decides a question of policy. He may think that although the charge of anticipation can be successfully met and defeated, yet a disclaimer will not affect the real value of his patent and to make it may avoid trouble and expense. He is at liberty after the disclaimer, as well as before, to deny the anticipatory effect of the other matter. Permutit Co. v. Wadham, supra. There is here no claim of fraud, undue delay, or other malpractice, and we are clear that the disclaimer of the two claims was not an admission that they are invalid, nor would such disclaimer necessitate disclaiming Claim 39.

In Maytag Co. v. Brooklyn Edison Co., 2 Cir., 86 F.2d 625, and Maytag Co. v. Easy Washing Machine Corp., 2 Cir., 96 F. 2d 87, the claims of the Snyder patent here involved were held invalid for anticipation by the prior art. These cases were between different parties, and hence, as a matter of law, do not deprive the plaintiff of the right to the independent judgment of this court. Triplett v. Lowell, supra. We have given respectful consideration to these opinions, but are unable to accept them as controlling under the facts as they appear in the instant case. Any discussion of these cases would be largely a comparison of what has already been stated by us with what has been said in these cases. The records in the cases are not the same, and we are, of course, controlled by the record in the case before us. But insofar as those cases hold that prior patents anticipated Snyder, we are unable to follow them.

The decree appealed from is therefore affirmed.