**MONTGOMERY WARD & CO. v. CLAIR**
et al.

**SEARS ROEBUCK & CO. v. SAME.**

Nos. 12090, 12091.

Circuit Court of Appeals, Eighth Circuit.

Dec. 1, 1941.

Rehearing Denied Dec. 31, 1941.

Armand E. Lackenbach, of New York City, and Thomas E. Scofield, of Kansas City, Mo., for appellants.

C. W. Prince, of Kansas City Mo. (William R. Ross, of Kansas City, Mo., on the brief), for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

These are patent infringement cases. The patented devices and the accused devices are the same in each. The cases were consolidated for trial and appeal and are presented here on a single record. For this reason they may appropriately be disposed of in one opinion.

The appeals by the defendants are from final decrees granting injunctions and judgments for damages. See opinion of the district court in 36 F.Supp. 664. The defenses are invalidity, non-infringement, and laches.

The petitions each alleged infringement of two patents owned by plaintiffs: the Dyer patent, No. 1,317,912, issued October 7, 1919, and the Campbell patent, No. 1,-577,821, issued March 23, 1926. Appellants' accused devices are designated No. 73 and No. 74 by the manufacturer. No. 73 was patented by Perkins August 10, 1928 (No. 1,791,972), and No. 74 by Stark June 29, 1934 (No. 1,993,572).

The patented devices in suit are steering stabilizers for automotive vehicles. Their primary purpose is to prevent wobbling or shimmy of the front wheels. Other purposes are to prevent rattle and to hold the vehicle in a straight course when moving forward.

Only claim 1 of the Dyer patent and claim 2 of the Campbell patent are involved in these suits. Claim 1 of the Dyer patent reads:

"In combination with an axle, knuckle, and knuckle arm, a member slidably engaging the axle and operatively connected to the arm, and means holding said member frictionally to the axle."

Claim 2 of the Campbell patent reads:

"In a device of the kind described, the combination with the front axle, the spindle pivoted thereto having a steering arm, and steering connecting rod pivoted to said steering arm, of a spring having portions disposed respectively above and below the connecting rod and having a bearing against said spindle arm and having a sliding bearing against said axle by which the spindle arm is opposed by a substantially uniform pressure against movement in either direction."

In both patents it is sought to prevent wobbling by means of a device used in combination with the conventional parts of an automobile. The parts of the vehicle utilized in both patents are the front axle, the knuckle part of the spindle, the steering arm (also called the spindle arm and the knuckle arm), and the rod connecting the steering arms.

The Dyer device consists of a (1) "member [bar of metal] (a) slidably engaging the axle and (b) operatively connected to the arm" and (2) "means [a tension spring] holding said member frictionally to the axle."

The Campbell device consists of "a spring * * * (a) having a bearing against the spindle arm and (b) a sliding bearing against the axle." By means of

the spring "the spindle arm is opposed by a substantially uniform pressure against movement in either direction."

The accused devices, No. 73 and No. 74, are manufactured by Kastar, Incorporated, and sold to and by the appellants.

Device No. 73 consists of a friction member, namely, a U-shaped wire spring clamped in the middle to the center of the connecting rod. The two side arms each having a resilient coil are brought together crosswise and extended to lie with opposing frictional pressure against the axle.

Device No. 74 is similar to No. 73 in reverse, that is, the ends of the wire comprising the springs are clamped to the center of the axle and the U-shaped center is bent over at right angles to form a yoke which straddles and bears frictionally against the connecting rod.

Wobbling or shimmy is ascribed to many causes. The most common cause is said by the appellees to be the result of looseness in the joints of the steering mechanism and by the appellants to be due to the vibration of the connecting rod which in turn is due to other causes. All parties agree that wobbling is frequently engendered when a front wheel strikes a bump or other obstruction which deflects the direction of the front wheel from a straight course. The movement thus begun in one of the front wheels is communicated through the spindle, spindle knuckle, steering arms and connecting rod to the opposite front wheel, and the two wheels then shimmy in unison. After this action begins, in cases induced by worn and loose joints, the joints about the king bolt and at the end of the steering arm rattle and the connecting rod vibrates both lengthwise and sidewise in time with the wobble of the wheels.

The Dyer and Campbell patents are devised upon the principle that wobbling or shimmy of the front wheels due to loose joints in the steering mechanism can be prevented by maintaining the joints in a tight or close-fitting position, and that this condition can be effected by exerting a constant pressure upon the ends of the steering arms. This is accomplished in both devices without hampering the normal movement of the steering mechanism by means of the member slidably and frictionally engaging the axle and thereby "yieldably" resisting the movement of the spindle arm.

■ The first defense urged to the charge of infringement is invalidity of appellees' patents because of anticipation. The appellants rely upon the prior art. "* * * the prior art is a field not open to discovery. Novelty, justifying a patent, must be found outside that field." Smith v. Mid-Continent Inv. Co., 8 Cir., 106 F.2d 622, 624. See, also, Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U. S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005; McKays Co. v. Penn Electric Switch Co., 8 Cir., 60 F.2d 762, 767. It is true that neither Dyer nor Campbell were the first to conceive the idea that shimmy or wobble can be prevented by tightening the joints of the steering mechanism and holding the joints in that position by exerting pressure upon the ends of the steering arms. A similar principle had been applied in the prior art: Exley and Field (1915), 1,158,-469; Miller (1915), 1,144,771; Huffman (1920), 1,378,542; Beal (1921), 1,428,515; Hepler (1915), 1,163,406; Hunt (1915), 1,-164,522; Yager (1916), 1,193,331; Perry (1914), 1,103,538; Afanador (1917), 1,-213,057. These patents have for their primary object the returning to and holding of the front wheels in a straight ahead position. Beal's device by holding the spring under tension at all times is designed also "to overcome undesirable looseness and wobbling of the front wheels of the vehicle." The function in these prior art patents of returning the front wheels to a straight ahead position and holding the vehicle in a straight course is achieved by the application of springs to the steering arms so that tension initiated by any turning movement of the vehicle will exert an increasing pressure upon the arms. To the extent that pressure is applied, all of these devices tend to tighten the joints and to overcome wobble or shimmy; but in all of them, except perhaps in Beal, as pressure is increased upon one arm it is relaxed upon the other. The novel feature of the Campbell patent, and to some extent of Dyer, is that the slidable and frictional "member" which engages the axle maintains a constant and uniform pressure at all times upon both arms. This feature both by the means employed and the function performed distinguishes the Campbell patent, and to some extent the Dyer patent, from the means employed and the functions performed by the prior art patents referred to above. The patents to Stahl (1916), 1,183,600; Flint (1916), 1,176,356; Griffeth (1917), 1,-238,135, and Griffeth (1919), 1,317,017, relied upon by appellants as anticipating the Campbell device, are all single wire spring

stabilizers which have no bearing upon the axle and which tighten only the joint between the connecting rod and the spindle arm. None of these devices exerts pressure upon the spindle joint. In this respect their function differs from that of the Campbell device whose slidable frictional bearing on the axle exerts a constant pressure on both the connecting rod and spindle joints.

It is claimed by appellants that in so far as the patents in suit employ a "slidably frictional" bearing upon the axle to secure a "yielding" pressure upon the steering arms they are anticipated by Lowe (1915), 1,146,631, and by Witting (1916), 1,174,924. These patents neither perform the same function nor employ the same means of the patents in suit. Both structures are complicated devices rigidly attached to the front axle and slidably and frictionally engaging the connecting rod. They exert no pressure upon the arms, except in a turning movement of the vehicle, and they embody no means of tightening the joints at both ends of the axle at the same time. By retarding the endwise movement of the connecting rod they would no doubt prevent rattling in the connections and tighten the joints (at one end of the axle) after a turning motion is initiated. The important disclosure of these devices is that when it is desired to retard but not prevent the free movement of one of the parts of a combination, a "slidable frictional" means to secure the necessary resistance is not new or novel. In that way the scope of the patents in suit at this point is limited to the specific means employed.

The law is that whoever finally perfects and improves a device and renders it capable of practical, useful and effective operation is entitled to a patent although others had the idea and made experiments toward putting it into practice. See The Barbed Wire Patent, 143 U.S. 275, 283, 12 S.Ct. 443, 36 L.Ed. 154; Wine Ry. Appliance Co. v. Baltimore & O. R. Co., 4 Cir., 78 F.2d 312; Thomson v. Citizens' Nat. Bank, 8 Cir., 53 F. 250, 252; Western Electric Co. v. North Electric Co., 6 Cir., 135 F. 79; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910; Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 8 Cir., 215 F. 362; Stevens Arms & Tool Co. v. Davenport, 1 Cir., 134 F. 869, 871; General Electric Supply Corp. v. Maytag Co., 8 Cir., 100 F.2d 218; Washburn v. Gould, C.C.Mass., Fed.Cas.No. 17,214, 3 Story 122, 7 Law Rep. 276. The Campbell invention is therefore protected by patent for the additional reason that it not only performed a greater and more beneficial function than did the devices in the prior art but also because it employed a more simple, facile, economical and efficient means of so doing. This device was much more than "a mere exercise of the skill of the calling" or "an advance 'plainly indicated by the prior art.'" Cuno Engineering Corporation v. Automatic Devices Corporation, 62 S.Ct. 37, 39, 86 L.Ed. ——, decided November 10, 1941. Campbell accomplished the result which the other inventors had been groping to attain.

We conclude that both claim 1 of the Dyer and claim 2 of the Campbell patents are valid when construed subject to the limitations and restrictions indicated in the foregoing discussion.

The issue of infringement involves the relation of each of appellants' devices, No. 73 and No. 74, to each of appellees' patents. It is settled that "to sustain the charge of infringement the infringing device must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of attaining that result; and (3) the manner in which its different parts operate and co-operate to produce that result. If the devices are substantially different in either of these respects the charge of infringement is not sustained." Electric Protection Co. v. American Bank Protection Co., 8 Cir., 184 F. 916, 923. See, also, Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 24 L.Ed. 935; McKays Co. v. Penn Electric Switch Co., 8 Cir., 60 F.2d 762, 766; Hyman v. F. W. Woolworth Co., 8 Cir., 28 F.2d 833, 837. It is necessary therefore in determining the question of infringement to look at the mode of operation or the way the device works, together with the result and the means by which that result is attained. McKays Co. v. Penn Electric Switch Co., supra.

Turning first then to a comparison of the Dyer patent with No. 73, it will be remembered that the virtue of the Dyer patent consists of a combination of elements which produces (1) a tightening of the joints of the steering mechanism and (2) a frictional resistance against the axle. Claim 1 of the patent describes the elements contributing to this result as

(a) A member slidably engaging the axle and operatively connected to the arm, and

(b) Means holding said member frictionally to the axle.

In the illustration of the device in the patent the "member" disclosed is a metal bar pivoted to the outer portion of the steering arm with the free end resting slidably against the axle. The "means" is a tension spring with one of its ends attached to the free end of the bar and its opposite end to the steering arm at a point "not too close" to the connection of the arm and bar.

▮▮▮ The object of the alleged infringing device No. 73, embodied in the Perkins patent, is declared to be frictionally to hold the connecting rod against a free endwise movement and prevent shimmying by preventing the vibrations of one front wheel from being transmitted to the other. The device consists of a U-shaped wire spring attached to the middle of the connecting rod with a resilient coil in each arm, the arms being crossed and exerting a frictional spring pressure against the axle. The arms slide on the axle in any turning movement of the car. No claim is made in the patent that the device will have the effect of tightening the joints of the steering mechanism; but since the springs exert pressure rearwardly upon the center of the connecting rod it may be assumed that they do have such an effect. We have seen, however, that stabilizing devices for exerting pressure upon the ends of the steering arms are old in the art. The serious claim of infringement is that No. 73 includes a member slidably engaging the axle and that the word "means" in claim 1 of the Dyer patent is broad enough to cover such device. This contention is not based upon any resemblance of the Perkins device to the Dyer device, but upon the claim that the Dyer patent is a pioneer in the art and is entitled to a broad range of equivalents. The construction contended for by appellees requires that both the "member" and the "means" of claim 1 of the Dyer patent be read upon the spring element in No. 73. In view of the restrictions due to the prior art upon the construction of the Dyer patent referred to supra, such a broad interpretation of the claim is not permissible. In no sense is the wire spring of the Perkins patent an equivalent of the coil tension spring, or "means", of the Dyer patent. An element in one device is the equivalent of an element in another device "if it performs substantially the same function in substantially the same way to obtain the same result." Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935; Freeman v. Altvater, 8 Cir., 66 F.2d 506, 511. The Perkins device does not function in substantially the same way nor use the same "means" as does the Dyer device to obtain the result—that is frictional resistance. The former functions by spring pressure of the member itself upon the axle, while the latter functions through a different form of spring exerting a tension upon the slidable member. We hold that appellants' device No. 73 does not infringe the Dyer patent. The elements under consideration in the two devices do not function in the same way. Gibbs v. Triumph Trap Co., 2 Cir., 26 F.2d 312; Bull Dog Floor Clip Co. v. Munson Mfg. Co., 8 Cir., 19 F.2d 43.

A comparison of appellants' device No. 74, the Stark patent, with the Dyer patent demonstrates that it does not infringe the latter patent for the same reason that No. 73 does not. The "member" and the "means" cannot both be read upon the spring element of No. 73 and No. 74 without doing violence to the "way" in which they function.

▮▮▮ There is infringement of the Campbell patent. Both No. 73 and No. 74 are substantially identical with the Campbell device in (1) result attained, (2) means of attaining that result, and (3) the manner in which their parts operate and co-operate to produce that result. To refute infringement by stabilizer No. 73, appellants insist upon two distinctions, viz., (1) that the spring does not have "a bearing against said spindle arm" as specified in claim 2 of the Campbell patent, and (2) in No. 73 the spindle arm is not "opposed by a substantially uniform pressure against movement in either direction." The first of these contentions is not tenable because the spring in No. 73, although not directly connected with the spindle arm, does, through the connecting rod to which it is attached, bear against the spindle arm. No. 73, therefore, does indirectly exactly what the Campbell device does directly. The second contention is without merit because the uniform rearward pressure of the springs in No. 73 combined with the opposition of the two springs upon the axle does result in a substantially uniform pressure against movement of the spindle arms in either direction.

It is said the prior art patents, Hunt (1915) 1,164,522, and Yager (1916), 1,193,331, exclude such a broad interpretation of the Campbell patent. These patents show wire springs anchored to the middle of the front axle and attached to the connecting rod for the purpose of holding an automobile in a straight course, but the springs are tensed only by the turning movement of the car. They do not exert a constant pressure upon any of the parts. Hunt and Yager should not be held to limit the Campbell patent upon these material points.

Appellants distinguish stabilizer No. 74 from the Campbell patent by contending that there is an absence in No. 74 of two claimed elements of the Campbell patent, (1) a spring having a bearing against the spindle arm and (2) a spring having a sliding bearing against the axle. We have observed supra that No. 74 is only in so far as material a reversal in form of No. 73. No. 74 is clamped to the axle instead of to the connecting rod, and the spring member slides frictionally upon the connecting rod instead of upon the axle as in No. 73. There is no change of principle in the function of the two devices. Infringement cannot be avoided by the non-essential reversal or transposition of elements without change of function. Allen v. Wingerter, 3 Cir., 17 F.2d 745; Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict, 2 Cir., 151 F. 585; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693; Minnesota Moline Plow Co. v. Dowagiac Mfg. Co., 8 Cir., 118 F. 136.

The appellants' third defense is that the complainants are guilty of laches and delay. No notice of infringement was served upon the defendants nor upon the manufacturer of stabilizers No. 73 and No. 74 until notices of the present suits were served June 30 and July 10, 1939. Appellees state in a bill of particulars furnished by them that they "became aware of the sale by defendants of the devices charged herein to be infringed, about the year 1933"; and there is evidence that appellees' attorneys should have known of such sales as early as 1929. Appellants contend that such delay and apparent acquiescence should be considered ground for denying relief at least as to damages. The Dyer patent had expired about three years before the beginning of these suits so that no injunction may issue against infringement of that patent in any event.

It is a rule, often followed in patent and trade-mark cases, that courts of equity will deny recovery of profits in infringement cases brought after long delay, except from the date of the commencement of the suit, when the circumstances are such that it would be an injustice to award damages. Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Westinghouse Air Brake Co. v. New York Air Brake Co., C.C. N.Y., 111 F. 741; A. R. Mosler & Co. v. Lurie, 2 Cir., 209 F. 364; Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 35, 32 L.R.A.,N.S., 274. But an injunction applying to future conduct will not usually be denied unless the elements of estoppel exist. Drum v. Turner, 8 Cir., 219 F. 188, 198. No evidence of deceit is present in the instant case and no proof that appellants altered their conduct to their prejudice on account of the delay. An injunction cannot be denied, therefore, restraining future infringement of the Campbell patent; and no damages can be allowed for infringement of the Dyer patent because we have held that it is not infringed by appellants' devices.

There remains to be determined whether damages may be allowed for infringement of the Campbell patent. During the period of delay the record discloses that the appellees were litigating in the courts the validity of both the Dyer and the Campbell patents until within about two months prior to the commencement of the present suits, and that appellants had knowledge of that fact. An inventor is not required to litigate the validity of his patent against every possible infringer. A suit pending to sustain the validity of a patent is notice to all infringers of the insistence of the patentee upon his claimed rights. United States Mitis Co. v. Detroit Steel & Spring Co., 6 Cir., 122 F. 863, 866; Tompkins v. St. Regis Paper Co., 2 Cir., 236 F. 221, 225; Edison Electric Light Co. v. Sawyer-Man Electric Co., 2 Cir., 53 F. 592, 597; Hartford-Empire Co. v. Swindell Bros., 4 Cir., 96 F.2d 227, 233. Cf. Cinema Patents Co. v. Warner Bros. Pictures, D.C. N.Y., 55 F.2d 948, 960. No reason appears to justify a refusal of the court to award damages for infringing the Campbell patent.

We hold that the appellants' devices do not infringe claim 1 of the Dyer patent. The damages awarded should be adjusted to conform to this holding. In all other respects the decrees appealed from are af-

firmed and the cases are remanded for further proceedings in conformity with this opinion.

Modified and affirmed.