### CLAIR et al. v. KASTAR, Inc.

District Court, S. D. New York.

Oct. 31, 1944.

Munn, Liddy & Glaccum, of New York City (C. W. Prince, of Kansas City, Mo., of counsel), for plaintiffs.

Lackenbach & Hirschman, of New York City (Joseph Hirschman and Armand E. Lackenbach, both of New York City, of counsel), for defendants.

LEIBELL, District Judge.

Plaintiffs brought this suit for infringement of all three claims of the Campbell patent, No. 1,577,821, issued March 23, 1926. The action was "commenced" by the filing of the complaint in the office of the Clerk of this Court on December 30, 1942, according to Rule 3, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Process was served January 5, 1943. The Campbell patent was for a stabilizing device to be applied to the steering mechanism of an automobile, at the steering rod and axle, to prevent "shimmying", i. e., wobbling of the front wheels. The defendant answered, pleading special defenses, including laches and fraud, and also a counterclaim, based upon plaintiffs' alleged infringement of the Stark patent No. 1,993,-572, issued March 5, 1935, owned by defendant.

The Campbell patent was involved in litigation, instituted in the United States District Court, Western District of Missouri, April 10, 1933, in a suit for infringement brought by these plaintiffs against the Western Auto Supply Co. The case was tried before Judge Collet more than four years later, and on December 9th, 1937, he decided that all three claims of the Campbell patent were invalid for lack of invention. At the same time he held that another patent owned by plaintiffs (the Dyer patent, No. 1,317,912, issued October 7, 1919) was valid and infringed, "particularly the first claim thereof". While cross appeals were pending, that litigation was settled and the appeals were dismissed on stipulation, by the Circuit Court of Appeals, Eighth Circuit, on April 12, 1939.

Then followed two suits by plaintiffs, also on the Dyer and Campbell patents (all 3 claims), against Sears Roebuck & Co. on June 29, 1939, and against Montgomery Ward & Co. on July 10, 1939, in the District Court of the United States, Western District of Missouri. The suits were tried before Judge Otis. Prior to the trial thereof the plaintiff in a bill of particulars limited its cause of action to claim 2 of the Campbell patent and claim 1 of the Dyer patent, thus withdrawing claims 1 and 3 of the Campbell patent. Judge Otis, 36 F.Supp. 664, decided that claim 1 of the Dyer patent and claim 2 of the Campbell patent were valid and infringed by the stabilizers sold by the defendants, Sears, Roebuck & Co. and Montgomery Ward & Co., which were models Nos. 73 and 74 manufactured by the present defendant, Kastar, Incorporated. In fact the present defendant undertook the defense of those two suits. A decree was entered February 18, 1941. The Circuit Court of Appeals for the Eighth Circuit affirmed Judge Otis January 26, 1942, 123 F.2d 878, as to claim 2 of the Campbell patent and reversed him as to claim 1 of the Dyer patent. No further appeal was taken. However an application was made in June, 1942, to that appellate court for an order to compel the District Court to carry out its mandate, but that application was dismissed June 26, 1942. Thus all the Midwestern litigation involving the Campbell patent had ended some time prior to the commencement of the present suit on December 30, 1942.

In the suit in this Court plaintiffs moved on February 23, 1943, for a summary judgment on the ground that the issues, except as to damages, were res judicata, and also asked that defendant's counterclaim be dismissed as improper. The defendant made a cross motion to dismiss the complaint on the ground that the Campbell patent was void because plaintiffs had not timely disclaimed claims 1 and 3 thereof. The District Judge, 51 F.Supp. 207, denied defendant's motion and held that claim 2 and its infringement had been judicially determined by Judge Otis in the two suits tried before him and that his decision was res judicata. Appeals were taken. In discussing the basis for the decision of the District Judge in this District, on plaintiffs' said motion, Judge Learned Hand of our Circuit Court of Appeals wrote (2 Cir., 138 F.2d 828, 829): "The District Judge held that Judge Otis's judgment was res judicata as to the validity of claim two and as to the defences of fraud and laches which the defendant pleaded in this action; but, since the patent had expired, he directed only an accounting. He did not discuss the issue of disclaimer on which the defendant also now relies, because the answer had not pleaded it; but after his opinion went down, the defendant moved for a reargument upon the ground that the plaintiffs had never disclaimed claims one or three, although over eleven months had passed between the decision of the Eighth Circuit

in the action before Judge Otis, and the filing of the action at bar. The judge granted the reargument but adhered to his former opinion."

Judge Learned Hand's opinion discussed the question of disclaimer and when the duty to disclaim arose in respect to claims 1 and 3 of the Campbell patent. I quote the following from his opinion: "Thus, if a patentee has had an opportunity to review a decision holding some claims of his patent invalid and some valid, and if he fails to avail himself of that opportunity, he must disclaim the claims held invalid within a reasonable time after the appellate court affirms so much of the judgment as holds any of the claims valid. Although it cannot be known until then that any part of the patent is valid and although not until then does the duty arise (Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949), then it does arise, and he delays any longer at the peril of losing his whole patent. The duty of the plaintiffs at bar to disclaim therefore depended upon whether they could have obtained a review of Judge Collet's ruling upon claims one and three in the action before Judge Otis. Although they had alleged that the defendants in that action infringed those claims as well as claim two, that did not indeed conclude them; but, if the same 'stabilizers' which were found to infringe claim two, did in fact infringe claims one or three, they withdrew either of those claims at their peril. It was their last chance to save them. Whether the 'stabilizers' did infringe either claim one or three was not tried in the motion for summary judgment, and could scarcely have been properly so tried. Although the judgment must therefore be reversed, the issue must be tried whether the 'stabilizers' infringed either of those claims; or, what is in effect the same thing, whether there was any substantial difference between either of them and claim two. Maytag Co. v. Hurley Machine Co., 307 U.S. 243, 59 S.Ct. 857, 83 L.Ed. 1264.

The Circuit Court of Appeals also referred to this trial court the issues involved in the defences of fraud and laches, and the propriety of the defendant's counterclaim under the Stark patent. On the retrial before me the defendant withdrew its counterclaim and the defense based on alleged fraud, which had little merit. On the issue of laches defendant offered some evidence. It did not differ very much from that offered before Judge Otis. I dismissed the defense of laches. That left only the issues involved in the defense based on plaintiffs' failure to disclaim claims 1 and 3 of the Campbell patent. At the end of the trial I concluded that the defendant's stabilizers, models 73 and 74, which were before Judge Otis, infringed claims 1 and 3 of the Campbell patent, and that there was no substantial difference between either of said claims and claim 2. At the time I thought it unnecessary to write an opinion discussing the principal features of Campbell's patent and the provisions of its three claims, because during the trial I had stated on the record my views on those questions. There have been at least five opinions written in the various litigations involving the Campbell patent. I did not think I should add to them. But on considering the proposed findings submitted by counsel, it seemed to me advisable to state somewhat at length my reasons for concluding that defendant's models 73 and 74 infringed claims 1 and 3 of the Campbell patent and also to discuss another point raised here for the first time, that the decree signed by Judge Otis in the first sentence thereof appears to adjudge the entire Campbell patent valid.

### The Issue of Infringement.

Campbell's stabilizing device consisted of a pair of identical heavy wire springs, so constructed that they could be readily applied to their operative positions at the ends of the connecting rods, and be readily held in such position without any securing devices other than the springs own form and resiliency. It was not a coil spring, cylindrical in form; rather, it had more of the properties of a flat spiral spring. It was made of heavy wire "doubled on itself" (i. e., with double loops), with the ends thereof extended at right angles to each other. When the short end of the spring was properly inserted in the forked end of the automobile steering rod, any tension pull applied to the long end of the spring would hold the short end securely in position. The tension on the long end of the spring was applied by having that end of such a length that it had to be pulled back in order to place it in the channel of the I beam of the axle, where it could slide nevertheless with the steering of the automobile. When placed in position on the connecting rod and the axles, the two extended ends of the spring formed an obtuse angle instead of the right

angle position before application. This change in position of the ends of the spring furnished the tension or pressure on the connecting rod which was necessary to accomplish the purposes of the invention. The looped portion of the spring, when the spring was in position, extended above and below the connecting rod at a point about 4 inches from its forked end, and as thus located the spring did not interfere with the free movement of the connecting rod. A pair of the springs, located one at each end of the steering rod, exerted such a yielding but uniform resistance to the movement of the steering rod, that together they prevented what is known as "shimmying", i. e., the wobbling of the front wheels. [For a model of a Campbell spring see plaintiffs' Exhibit 8, which is built to correspond to figure 3 of the Campbell patent drawings and Exhibit 9 corresponding to figure 4.]

Campbell's invention was described in the specification and illustrated in the patent in two forms (figures 3 and 4). In the application of both forms of Campbell's invention, the short end of the spring is shown as located firmly between the arms of the forked end of the connecting rod and the long end of the spring is shown as located in the channel of the adjacent side of the axle, where it can slide with the movement of the connecting rod and yet remain in place within the channel, being held there by the channel flanges. As thus located (see figures 2 and 5) the spring was firmly attached at only one place, the forked end of the connecting rod, while at the same time it embraced with its loops the upper and lower sides of the connecting rods, and had a sliding bearing on the axle (lines 64 et seq. and 80 et seq. of page 1; and lines 10 to 15, and 30 et seq. of page 2, of the printed copy of Campbell's patent). The manner of applying a pair of springs is shown in figure 1.

The spring is described in the specification as having a bearing against the connecting rod and against the steering (spindle) arm. "By having a sliding bearing against the axle, and thus exerting a uniform resistance to the movement of the steering rod and the spindle arms in either direction, the spring does not interfere with the easy steering of the machine, but prevents the 'shimmying' or wobbling of the front wheels" (lines 101 et seq. of page 1 of the printed copy of Campbell's patent).

Because the short U end of the spring (figure 3) as positioned in figures 1 and 2 rested on the adjacent end of the steering (spindle) arm, the specification stated that the spring afforded a substantially uniform resistance against movement of the connecting rod and the spindle arm in either direction and thus afforded "means for preventing rattling between the connecting rod and the adjacent spindle arm". However, in the form of spring shown in figure 4, applied as shown in figure 5, the spring "does not serve as an anti-rattler, but it provides a uniform resistance to the lateral movement in either direction of the steering rod and consequently prevents shimmying or wobbling of the steering (spindle) arms" (lines 23 et seq. of page 2 of Campbell's patent).

Claim 1 and 3 refer to the use of the Campbell spring located between the arms of the forked end of the steering connecting rod, to which the steering arm is pivoted. Claim 2 does not mention any steering connecting rod with a forked end. It states, however, that the steering connecting rod is pivoted to the steering (spindle) arm. Such a pivoting (where there is no forked end to the steering connecting rod) is usually formed by a bolt running through the flattened ends of the steering rod and the steering arm. Plaintiffs' spring in the form described in the specification and illustrated in the drawings (figures 3 and 4) could not be applied to a connecting rod of that type, because there would not be available any purchase or support for the short end of the spring shown in figures 3 and 4, unless some additional securing device was used, and that would be contrary to the teaching of the patent (lines 30 et seq. of page 1). The utility of plaintiffs' spring under claim 2 would depend therefore upon the steering connecting rod having forked ends.

In claim 1 the spring would bear against the rear end of the steering arm and also against the steering connecting rod. In claim 3 the short end of the spring (shown at the left side of figure 4 as having split ends) is inserted into and then spread laterally across the arms of the forked end of the steering rod, as shown in figure 5, and the long U shaped end of the spring (shown at the right side of figure 4) rests in the I beam channel of the adjacent side of the axle. In claim 3, the short split end of the spring, in the forked arms of the connecting rod, bears directly against

the steering connecting rod, and only indirectly against the steering arm, which is attached to the steering rod.

The defendant's infringing device, shown in models 73 and 74 (Exhibits 6 and 7), consists of a pair of springs, similar to Campbell's, made of heavy spring wire with the elasticity located in a double loop, the ends of each spring extending from the loops at about right angles to each other, one end being longer than the other. Defendant's devices are steering stabilizers, designed for the same purpose as Campbell's, to eliminate front wheel shimmy. Instead of being disposed at each end of the connecting rod of the automobile, the springs are centrally located, midway between ends of the connecting rod. The short ends of the springs meet and are firmly held together by a plate, which, by means of another plate and bolts, is attached in the case of model 73 to the steering rod and in the case of model 74 to the axle.

The Circuit Court of Appeals, Eighth Circuit, on the appeal from the decree signed by Judge Otis in the Montgomery Ward & Co. and Sears Roebuck cases, discussed the question of the infringement of claim 2 of the Campbell patent, by defendant's model 73 and 74. I quote the following from the Court's opinion (Montgomery Ward & Co. v. Clair, 8 Cir., 123 F.2d 878 at pages 882-883) :

"There is infringement of the Campbell patent. Both No. 73 and No. 74 are substantially identical with the Campbell device in (1) result attained, (2) means of attaining that result, and (3) the manner in which their parts operate and co-operate to produce that result. To refute infringement by stabilizer No. 73, appellants insist upon two distinctions, viz.: (1) that the spring does not have 'a bearing against said spindle arm' as specified in claim 2 of the Campbell patent, and (2) in No. 73 the spindle arm is not 'opposed by a substantially uniform pressure against movement in either direction.' The first of these contentions is not tenable because the spring in No. 73, although not directly connected with the spindle arm, does, through the connecting rod to which it is attached, bear against the spindle arm. No. 73, therefore, does indirectly exactly what the Campbell device does directly. The second contention is without merit because the uniform rearward pressure of the springs in No. 73 combined with the opposition of the two springs upon the axle does result in a substantially uniform pressure against movement of the spindle arms in either direction. It is said the prior art patents, Hunt (1915), 1,164,522, and Yager (1916), 1,193,331, exclude such a broad interpretation of the Campbell patent. These patents show wire springs anchored to the middle of the front axle and attached to the connecting rod for the purpose of holding an automobile in a straight course, but the springs are tensed only by the turning movement of the car. They do not exert a constant pressure upon any of the parts. Hunt and Yager should not be held to limit the Campbell patent upon these material points.

"Appellants distinguish stabilizer No. 74 from the Campbell patent by contending that there is an absence in No. 74 of two claimed elements of the Campbell patent, (1) a spring having a bearing against the spindle arm and (2) a spring having a sliding bearing against the axle. We have observed supra that No. 74 is only in so far as material a reversal in form of No. 73. No. 74 is clamped to the axle instead of to the connecting rod, and the spring member slides frictionally upon the connecting rod instead of upon the axle as in No. 73. There is no change of principle in the function of the two devices. Infringement cannot be avoided by the non-essential reversal or transposition of elements without change of function. Allen v. Wingerter, 3 Cir., 17 F.2d 745; Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict, 2 Cir., 151 F. 585; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 8 Cir., 106 F. 693; Minnesota Moline Plow Co. v. Dowagiac Mfg. Co., 8 Cir., 118 F. 136."

What was said there of the infringement of claim 2 of the Campbell patent applies with equal force to the infringement of claim 1 by defendant's devices, which were designed to be used on the axle and steering rod, regardless of whether the ends of the steering rod were forked. Defendant's models 73 and 74 infringe claim 1 of the Campbell patent.

The device of Campbell's claim 3 (the spring shown in figure 4) bears on the connecting rod and the axle, and does not physically touch the spindle arm. The same is true of the defendant's models Nos. 73 and 74. They infringe claim 3 of the Campbell patent.

### The Scope of the Decrees Signed by Judge Otis, February 18, 1941.

Judge Otis in his memorandum opinion made no reference to the fact that the issues presented by the bill of complaint, which charged generally infringement of the Campbell and Dyer patents, had been limited to the validity and infringement of claim 1 of the Dyer patent and claim 2 of the Campbell patent, by a bill of particulars filed by plaintiffs before the trial. In the course of his memorandum he said: "For the reasons I have stated, I think plaintiffs' patents involve invention and are valid." [36 F.Supp. 666.] In his findings of fact he found that defendant's devices (models No. 73 and No. 74) infringed the Dyer patent and the Campbell patent, without specifying which claims. But in his conclusions of law he limited his decision of validity and infringement to claim 1 of the Dyer patent and claim 2 of the Campbell patent. That really constituted his decision and that was all he intended to decide.

The decrees entered thereon on February 18, 1941, in the suit against Montgomery Ward & Co. and in the suit against Sears Roebuck & Co. were identical. In the first sentence of paragraph first thereof, it was adjudged generally that the Dyer patent and the Campbell patent were good and valid and that they had been infringed by defendant through the sale of devices Nos. 73 and 74, without specifying any particular claims of the patents. But the second sentence of the same paragraph in dealing more specifically with infringement adjudged only that claim 1 of the Dyer patent and claim 2 of the Campbell patent had been infringed by defendant's devices. Paragraph second of the decree, which contained its injunctive provisions, was limited to "Shimmy-Stops and Steering Stabilizers, infringing Claim 2 of Letters Patent 1,577,821 (Campbell) dated March 23, 1926." Since the Dyer patent had already expired, no injunctive provision in relation thereto was included. Judge Otis certainly did not intend that his decree should go beyond his decision as expressed in his conclusions of law, and his decree received as a whole determined only the validity and infringement of claim 1 of the Dyer patent and claim 2 of the Campbell patent.

On the appeal to the Circuit Court of Appeals, Eighth Circuit, that Court in its opinion specified the issues involved in the litigation. The appellate court wrote: "Only claim 1 of the Dyer patent and claim 2 of the Campbell patent are involved in these suits." 123 F.2d 878 at page 879. On the question of validity the Court stated: "We conclude that both claim 1 of the Dyer and claim 2 of the Campbell patents are valid when construed subject to the limitations and restrictions indicated in the foregoing discussion." On the question of infringement the Court discussed the defendant's devices and claim 1 of the Dyer patent and concluded that "appellants' device No. 73 does not infringe the Dyer patent" and that device No. 74 "does not infringe the latter (Dyer) patent for the same reason that No. 73 does not." 123 F.2d at page 882 of the opinion. As to the Campbell patent the Court concluded: "There is infringement of the Campbell patent", and then went on to discuss the provisions of claim 2 of the Campbell patent and the structure and mode of operation of defendant's devices Nos. 73 and 74. The concluding paragraph of the appellate court's opinion stated [123 F.2d 883]: "We hold that the appellants' devices do not infringe claim 1 of the Dyer patent. The damages awarded should be adjusted to conform to this holding. In all other respects the decrees appealed from are affirmed and the cases are remanded for further proceedings in conformity with this opinion."

The mandate entered on the aforementioned opinion contained the following provision: "On Consideration Whereof, It is now here Ordered, Adjudged and Decreed by this Court, that the decree of the said District Court appealed from in these causes be, and the same are hereby modified so as to hold that the appellants' devices do not infringe Claim 1 of the Dyer patent, and the damages awarded should be adjusted to conform to such holding. In all other respects the decrees appealed from are by this Court hereby affirmed and the cases are hereby remanded to the said District Court for further proceedings in conformity with the opinion of this Court filed herein."

It appears from both its opinion and mandate that the appellate court construed the decree signed by Judge Otis as adjudicating only that claim 1 of Dyer patent and claim 2 of the Campbell patent were valid and had been infringed by defendant's models Nos. 73 and 74.

Further, that was the interpretation of those decrees assumed by counsel when the Circuit Court of Appeals, Second Circuit,

had before it an appeal from the decree of Judge Coxe in this present action, and that too was the interpretation of Judge Learned Hand as appears from the following statement of his opinion: "During its (the Campbell patent's) prosecution the plaintiffs withdrew claims one and three, leaving in suit only claim two, which Judge Otis held valid and infringed on February 18, 1941. The defendant appealed from this judgment to the Circuit Court of Appeals, but without success and the mandate of affirmance went down on January 26, 1942." He also stated later on in his opinion: "As was their right, they therefore again declared upon all three claims in the action before Judge Otis. The first question is whether they are bound to disclaim claims one and three within a reasonable time after they had withdrawn them in that action." No argument was made in the Circuit Court of Appeals, Eighth Circuit, or in the Circuit Court of Appeals, Second Circuit, that the decrees signed by Judge Otis adjudged all three claims of the Campbell patent valid.

In the case at bar the plaintiffs sued upon all three claims of the Campbell patent. On a motion made by plaintiff for summary judgment, 51 F.Supp. 207, Judge Coxe wrote an opinion in which he referred to the two suits against Montgomery Ward and Sears Roebuck in the Western District of Missouri and stated: "The suits resulted in decrees holding claim 2 of the patent valid and infringed by both devices" and that "These decrees were later affirmed on appeal in so far as they related to the Campbell patent." He concluded "that the decrees in the Missouri suits are res judicata of the issues in the present suit." The following is quoted from the decree signed by Judge Coxe April 30, 1943: "3. That said William P. Campbell was the true, original and first inventor of the invention described and claimed in United States Letters Patent No. 1,577,821; that said Letters Patent are good and valid and that claim 2 thereof has been infringed by defendant Kastar Incorporated, a corporation of the State of New York, by its manufacture, sale and use, within the Southern Judicial District of New York and elsewhere within the United States, of automobile steering stabilizers designated by defendant as its Models '73' and '74'."

Here again we have a decree with broad language as to the validity of the Campbell patent, although all the judge decided was

that claim 2 was valid and infringed. That is the interpretation given to the decree of Judge Coxe by Judge Learned Hand in his opinion, as appears from the following quotation: "The District Judge held that Judge Otis's judgment was res judicata as to the validity of claim two * * *."

In view of these successive interpretations of the scope of Judge Otis's decree, all to the same effect, it would be inequitable to construe it differently at this time, especially since any such construction would mean that Judge Otis intended to judicially determine the validity of claims 1 and 3 of the Campbell patent, which had been expressly withdrawn from his consideration by plaintiff's bill of particulars limiting the issue to claim 2 thereof.

I have signed findings of fact and conclusions of law which are being filed together with this opinion. Settle decree on two days' notice.