## TYPEWRITERS HILLIARDIZED, Inc., v. CORONA TYPEWRITER CO.

### No. 332.

Circuit Court of Appeals, Second Circuit.
Aug. 4, 1930.

Martin & Rendell, of Utica, N. Y. (Thomas Ewing, of New York City, and Vernon M.

Dorsey and Alan F. Garner, both of Washington, D. C., of counsel), for appellant.

Kenyon & Kenyon, of New York City (Wm. Houston Kenyon and Theodore S. Kenyon, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff's patent was granted to Frederic W. Hilliard May 25, 1909. His original application was filed August 25, 1896. It was divided, and the patent in suit issued on the application filed November 18, 1904. No typewriters were made in accordance with the patent, and it expired before decision below.

Hilliard wanted to combine visibility in a typewriter with the wearing qualities then obtainable only in an invisible machine. He recognized the great durability and stability of alignment which had been obtained by using type bars mounted on a full ring with room for adequate bearings as exemplified by the Remington invisible typewriter. He attempted to solve the problem of getting visibility without sacrificing these advantages. Visible typewriters were then well known, but not as yet had a satisfactory way been found to crowd all the type bars into a segment of a type ring, so common to-day, and get a machine which would stand up well in use. As he states in his specifications:

"My invention is an improvement in typewriting machines, its primary aim being to produce a typewriter with the double advantage of printing in sight and with a whole type ring in which to pivot the type bars.

"Typewriters heretofore constructed are divisible into two classes, viz., those in which the printing is done out of sight but which are provided with whole type rings for the type bars, and those which print in sight but which are only provided with arcs of type rings for the type bars. My invention combines the advantages of each of the two classes without their disadvantages. As illustrating my meaning, the circle in which the type bars are pivoted, may be considered as comprising the four quadrants, or 90 degree arcs, thereof; and in my machine the type bars are pivoted in all four such arcs, while in many other visible writing machines, heretofore in use, the whole set of type bars is comprised within two, and usually less than two, such arcs. For convenience of description it may be said that my set of type bars comprise four series of bars, viz., those pivot-

ed in the quadrant at the top of the circle, those pivoted in the two quadrants the one at the right and the other at the left hand side of the circle, and those pivoted in the quadrant at the bottom of the circle; the whole set thus being comprised in four arcs of 90 degrees each."

Again his specifications declare that:

"By this arrangement I am enabled to secure a whole type ring in which to pivot the type bars, and I also secure the additional advantage of printing in sight. Heretofore type writing machines have either been constructed to print out of sight or else the type bars have all been mounted in only one half of the type ring. By my present construction I have secured the advantages of both classes of machines without their disadvantages."

Thirty claims of his patent were allowed. Nos. 5, 20, 22, 23, and 30 are relied on. They are as follows:

"5. In a type-writing machine, the combination of a printing platen, a type bar plate mounted in front of the platen, in a plane oblique to the horizontal plane of the machine and having a central opening in the line of vision between the operator and the platen, a series of type bars mounted on the type bar plate around the central opening arranged to strike through the opening to the platen, a series of connecting wires attached to the type bars at one end and extending in a direction substantially parallel to the said line of vision, a series of bell crank levers to which the said connecting wires are attached at their other ends, and another series of connecting wires attached by one end to the said bell crank levers and by their other ends to a series of key levers, substantially as described."

"20. In a typewriting machine, the combination of a platen, a series of pivoted type-bars each provided with a plurality of types rigidly secured thereto, said type-bars being pivoted in an arc which lies in a plane oblique to the horizontal plane of the machine, and being constructed and arranged to strike between the top and front of the platen, a shift key, and connections between said shift key and said platen constructed and arranged to enable the platen to be shifted transversely from one position to another located in a plane parallel to the said oblique plane in which the type-bar pivots are situated."

"22. The combination of the platen movable endwise and also transversely to printing positions in a plane oblique to the horizontal plane of the machine, means for at

will moving the platen transversely, a series of type-bars pivoted in front of the platen, the pivots of the type-bars being situated in one or more planes oblique to a horizontal plane and each type bar having more than one character thereon, a series of horizontally disposed key levers pivoted in the rear of the type bar pivots and extending forward under the platen and type-bars, a series of angular levers or bell cranks pivoted below the type-bars and each operatively connecting a key lever with its corresponding type-bar."

"23. The combination of an endwise movable platen mounted to be shifted transversely to printing positions in a plane oblique to the horizontal plane of the machine, a series of pivoted type bars each having more than one character thereon, in front of the platen and normally lying inclined toward the front of the machine and arranged to strike downwardly upon the upper front quarter of the platen, a series of key levers pivoted in rear of the type bar pivots, a series of levers interposed between the type bars and key levers and operative connections between the interposed levers, key levers and type bars."

"30. The combination of an endwise movable carriage, a platen mounted thereon and movable transversely to the line of travel and in a direction inclined to a horizontal plane, means for at will so moving the platen transversely, a series of pivoted, horizontally-disposed key-levers extending under the carriage and to the front of the machine, a series of type-bars pivoted in front of the platen below the horizontal plane thereof and each of which swings on a single pivot-center, and normally inclined away from the platen toward the front of the machine, a support arranged obliquely to a horizontal plane and on which said type-bars are pivoted, two or more characters rigidly secured to each type-bar, operative connections between each type-bar and its corresponding key-lever, a vibratory inking-ribbon between said support and the platen, and ribbon mechanism constructed and arranged to bring said ribbon over the printing point at the moment of impact of a character and to then retract it away from the platen and out of the visual line between the operator and the printing point."

Briefly, the main accomplishment of Hilliard in respect to visibility was to take the basket formed by the type bars mounted on the full ring plate from under the platen as they were placed in the Remington invisible and put this basket in front of the platen. He inclined it at such an angle from and above the platen that the operator could look through the opening in the ring to a portion of the platen at, and for a few spaces either side of, the point where the keys struck. This construction required new arrangement of links and bell crank levers, but, in view of the prior art, especially as shown in patent No. 404,833, issued to Grundy June 11, 1889, and patent No. 427,174, to Huth, issued May 6, 1890, any novelty in this lies in Hilliard's specific arrangement, which the defendant does not use.

The machine claimed to infringe is known as the Corona No. 4. It is a small portable visible typewriter with all the type bars mounted in a slotted plate in the form of an arc of about 120 degrees. This plate is placed in front, and below the level, of the platen, and slopes backward so that the plane of the type bar pivots is tangent to the platen at the printing area which is on the upper front face of the platen. In Hilliard the type bars have separate bearings. In Corona No. 4 they are all mounted to pivot in slots and on one wire running through the plate on which they are banked.

█ Claim 5 plainly requires a whole ring type bar plate. Corona No. 4 does not have it. So infringement of that claim depends on whether what it does have is the equivalent of the full ring. This patent has had no commercial success whatever to lend it support. See Lovell v. Seybold Co. (C. C. A.) 169 F. 288. The defendant's machine, with its arc of a type ring, is in the other one of the two general classes into which Hilliard recognized that typewriters were divided at the time he filed his specifications; i. e., those with whole rings and those with segments. No discussion is necessary to show that a typewriter with only the arc of a type ring cannot work with the same mechanical action employed by one with the full ring. That is perfectly self evident. Improvements since Hilliard have so added durability to the segment key bank typewriters that their displacement of the full ring kind is common knowledge, but this has come about, not by using the distinctive mechanical features of the full ring, but by perfecting the arc or segment mechanism. The substantial equivalent of a patent is something which will do the same thing in substantially the same way, although it need not have the same form or name. Union Paper Bag Machine Co. et al. v. Murphy et al., 97 U. S. 120, 24 L. Ed. 935. Of course, regard should always be had for the character and degree of invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L.

Ed. 1122; Dowagiac Mfg. Co. v. Brennan & Co. et al. (C. C. A.) 127 F. 143. Here equivalence is shown neither by likeness of result or method. Hilliard's device is extremely crude compared to the Corona Four. He obtained limited and partial visibility only. The Corona has all of the printing plane of the platen in full sight. In Hilliard blind strike construction was made over to try to adapt it to an open sight machine. The result was a makeshift contrivance never put into use. In Corona No. 4 we find the result of bringing up to present day standards a kind of typewriting machine in which the old invisible full ring key bar installation was discarded for the arc plate which lent itself more readily to visible construction but had mechanical defects not found in the full ring. In striving to perfect the kind better adapted to unobstructed vision, sight writing has been obtained far beyond anything the Hilliard method would permit. Instead of substantially the same result, we find that the defendant has gone far beyond Hilliard in this respect. Nor has it been done substantially in Hilliard's way. On the contrary, the complete visibility of Corona would have been utterly impossible with the full ring and central opening of claim 5 of the patent. Solely by using a different method of construction, now brought to a degree of perfection unknown when the patent in suit was granted, the defendant has obtained a better result than that to which Hilliard even aspired. With neither substantial identity of result or method, it does not help the plaintiff to invoke the doctrine of equivalents in support of claim 5. Compare McCormick v. Talcott et al., 20 How. 405, 15 L. Ed. 930; Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Hardison v. Brinkman (C. C. A.) 156 F. 962.

The other claims in suit do not in terms tie to the full type bar ring. Unless they are read, however, as limited to the full ring they are beyond and apart from what Hilliard described as his invention in his specifications and fall into the class he mentioned merely to contrast with what he had invented; i. e., machines having "arcs of type rings for the type bars." Since we have decided that the arc is not the equivalent of the full ring, claims 20, 22, 23, and 30 all purport to cover something not described as the invention in the specifications. Of course, a patent creates a monopoly in nothing not both described and claimed. Outlook Envelope Co. v. General Paper Goods Mfg. Co. (C. C. A.) 239 F. 877; Fulton Co. v. Powers (C. C. A.) 263 F. 578; Loraine Development Co. v.

General Electric Co. (C. C. A.) 202 F. 215; Nash v. Cashin (D. C.) 3 F.(2d) 686. Nor can any drawings supply the entire absence of a written description. Gunn v. Savage (C. C.) 30 F. 366. They but serve to add clearness and certainty to what is actually described. Windle v. Parks & Woolson Machine Co. (C. C. A.) 134 F. 381; Tinker v. Wilber Mfg. Co. (C. C.) 1 F. 138.

[7, 8] Moreover, before the filing of Hilliard's divisional application on which this patent issued, Brooks patents, Nos. 670,699 and 678,473, had been granted in March and in July, 1901, respectively. Before this divisional application, Hilliard had no claims embodying the substance of Nos. 20, 22, 23, and 30. In each of the Brooks patents, a segment type bar machine is disclosed with an oblique platen shift by means of parallel links and the printing positions in, or parallel to, the plane of the type bar plate segment. We can see no real difference between Brooks and what is contained in these Hilliard claims except that only in Brooks No. 678,473 was disclosed the movable ribbon of claim 30 and Brooks used gear teeth to perform the function of links between the key levers and type bars evidently contemplated by Hilliard in claim 23. Before these claims were made by Hilliard, Brooks won the Smith v. Brooks interference in the Patent Office. See Official Gazette of September 27, 1904. Hilliard on September 30, 1904, amended his claims and demanded an interference with Brooks. On November 18, 1904, Hilliard filed his divisional application. The interference with Brooks was declared July 25, 1905. Brooks moved to dissolve and won. Hilliard took no appeal, but acquiesced by canceling or amending all of his claims that were involved. This decision resulted in Hilliard's accepting the arcuate platen shift. There are three kinds, viz. straight line, in which platen moves all in one plane as used by the Corona Four and disclosed in Brooks patent, No. 202,923, Brooks, No. 454,845, and well known in the prior art; the arcuate, in which the platen with its carriage moves on an axis in a slight curve (this is what Hilliard used); and the double link parallel shift, which moves the printing area out of the printing plane when the platen is in transit from one printing position to another, but always brings it back to the same plane when in printing position. After the interference decision adverse to him, Hilliard succeeded, by cancellation and amendment, in getting his patent allowed with the claims in suit. By his acceptance of that decision he foreclosed himself from claiming a construction giving

to him the oblique platen shift of Brooks. In re Wasserfallen, 54 App. D. C. 367, 298 F. 826, 828, 829; In re Henderson, 50 App. D. C. 191, 269 F. 707. As is said in Greenawalt v. American Smelting & Refining Co. (D. C.) 3 F.(2d) 658, 660, affirmed (C. C. A.) 10 F.(2d) 98; "Whatever is excluded in interference cannot be included in the patent; and whatever thus cannot be included cannot be claimed by construction."

Thus Hilliard is limited to the arcuate platen shift not employed by the Corona Four at all, and the plaintiff is estopped from claiming the straight line shift of the defendant's machine. Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500. The plaintiff has accordingly failed to show infringement of the Hilliard patent, and it is therefore unnecessary to discuss other defenses which have been argued.

Decree affirmed.