**CUSTOM UNDERGARMENT CORPORATION et al. v. R. H. MACY & CO., Inc. (JACK BECKERMAN, Inc., Intervener).**

No. 192.

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1944.

Mildred B. Teamer, pro se.

Samuel E. Darby, Jr., and Darby & Darby, all of New York City (Walter A. Darby, of New York City, of counsel), for appellees.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This action was brought in the District Court for the Southern District of New York by Custom Undergarment Corporation, the exclusive licensee, and by Mildred B. Teamer, the owner and patentee, for a temporary and permanent injunction and to recover damages for the alleged infringement of U. S. Patent No. 2,221,851 granted November 19, 1940, for a gown. The original defendant, R. H. Macy & Co., Inc., admittedly sold the accused garment after the patent was granted. It was manufactured by Jack Beckerman, Inc., which was allowed to intervene, to take over the defense and to file a counterclaim for a declaratory judgment.

When the case was called for trial, plaintiff Teamer did not appear by counsel or otherwise. The attorney for the other plaintiff informed the court that his client did not desire to proceed with the suit and he was allowed to withdraw. The defendant's attorney then presented his case on the counterclaim which consisted wholly of exhibits, no witnesses being called. The court found that the patent in suit "is wanting in invention over the prior art" and that the accused garment "does not utilize the invention of Teamer Patent No. 2,221,851." Conclusions of law to the effect that the complaint should be dismissed for want of prosecution, and that the patent was invalid and not infringed, were also filed. The decree dismissed the complaint and sustained the counterclaim.

On motion of plaintiff Teamer the decree, findings and conclusions were afterwards vacated and she was given an opportunity to be heard. The record does not show what occurred at that hearing,

but thereafter the same findings and conclusions, with the exception of failure to prosecute as a ground for dismissing the complaint, were filed as before and the same decree was entered. She has appealed from that decree.

The grant of the patent is prima facie evidence of its validity. Mitchell v. Tilghman, 19 Wall. 287, 390, 22 L.Ed. 125; Wilkins Shoe-Button Fastener Co. v. Webb, C. C., 89 F. 982, 996. Whether several prior patents, which are all the evidence which has been presented to overcome the prima facie validity of the patent, do overcome it must control decision on the question of validity.

As the Teamer specifications show, the claimed invention has to do with a method of making undergarments for women from single thicknesses of woven materials like natural and artificial silk, cotton and linen, having two main sections, the skirt and the waist, with the latter subdivided into top and belt portions. The problems to be solved were (1) to make the garment fit snugly especially about the waist and yet have sufficient elasticity to be put on and taken off without the aid of stretchable material other than that of which the garment was made and without any opening, like a gusset, at or near the waist line; and (2) to accomplish this when the waist was attached to a skirt cut in the way called "on the straight." The advantage of having the skirt so cut was to prevent its creeping up at the front when the wearer sat down and its sagging when the wearer was standing. On this record it is to be taken for granted that the construction shown achieves that advantage, for there is no evidence to the contrary.

The solution consisted of an arrangement of bias cut where stretching was desired and straight cut where it was not. Another advantage of the patented gown was its adaptability to changes in styles. The specifications show that bias cut as used in the patent is the cutting of the material diagonally across the weave. This was itself old, and that such material so cut would stretch was well known. What was said to be new is set forth in the specifications, in part as follows:

"The older straight-cut gown cannot under any circumstances be form fitting without providing an opening upon one side in order for the wearer to put the gown on, whereas openings are entirely unsatisfactory as they involve buttons, snap fasteners, hooks and eyes, so-called Zippers, and the like, all of which cause discomfort when the wearer turns and lies upon them. On the other hand, if not form fitting, the so-called straight-cut gown is not wide enough for comfort, unless it is constructed so large from top to bottom as to be shapeless, while this type is also extremely limited as to the number of styles which it may assume.

"The bias-cut gowns are form fitting without a side opening, but are characterized by a constant tendency to ride up the body of the wearer with each and every movement, unless made extremely wide in the skirt section, but which latter provision requires a large amount of material and can only be employed in the most expensive gowns. Also gowns which are cut strictly and entirely on the bias tend to fray at their seams, and if not very carefully cut, twist about the body of the wearer to such an extent as to result in a marked degree of discomfort.

"By comparison, the new design or construction herein described combines the best qualities of both the straight-cut and bias-cut types, as it includes a bias-cut belt which makes it form fitting without an opening; a straight-cut skirt, which makes it wider than either the straight-cut gowns or the ordinary well cut bias gowns, giving comfort and preventing twisting upon the wearer; requires a relatively small amount of material, which gives it an advantage over other types of gowns, as this enables it to be made relatively cheaper and still provide increased comfort; permits the waist top and bias belt to be so arranged and cut as to their minor details, as to make possible the gown assuming many styles with either high or low neck, high or low waist line, and either with or without sleeves."

It will be seen from the above, the contrary in no wise appearing, that the patented gown has these advantages flowing from the limitation of stretchability to the belt section of the waist cut on the bias combined with nonstretchability elsewhere. And it presumably will fit well, can be put on and taken off, and will not creep up or sag.

The following United States patents are relied on to establish the invalidity of the patent:

Aronson No. 1,977,465 has a belt section of elastic material across the front in shape like that of the patent in suit but

made of fabric unlike that of which the rest of the garment is made, and it also has a strip of that elastic material running up and down one side. Aronson had for one of his objects the elimination of bias cutting altogether, which he said made garments "difficult to launder" and "likely to sag, twist, and ride up upon the figure, and particularly at the shoulders of the garment." Instead of taking advantage of what elasticity would be put into the fabric of which the garment was made by the use of properly limited bias cutting, he worked entirely outside the disclosure of the Teamer patent. Nichthauser in No. 2,054,439 also avoided any bias cutting and gave to her combined brassiere and slip the ability to expand and contract where desired by using elastic material unlike the fabric of the garment. She sewed the breast pockets "to a resilient body encircling part 18, fabricated from any suitable elastic material, preferably a webbed material such as illustrated." The slip of Geisenheimer in No. 1,995,609 was cut on the bias entirely and so went to the other extreme without having the advantages of Teamer. Bloom No. 2,115,703 does not anticipate, for the same reason. One of the objects apparently accomplished was, as he says in his specification, to form a garment "all the pieces of which are arranged on a perfect bias so that they will stretch uniformly when sewed together." In the first patent granted to Fine, No. 2,080,703, use was made of both the insertion of elastic material and a lateral opening "with only one closure," another avoidance of bias cutting. And in the second patent granted to him, No. 2,093,192, he came no nearer to the patent in suit by discarding the opening and relying solely upon a piece of elastic material sewed into the back of the undergarment. Monroe in No. 2,088,245 cut the material both on the straight and on the bias. Her garment was made from five pieces all "cut on the true bias." She called the section at the top of the front of the garment piece 1, and across the front just below it was what she called strip 2, which was sewed in between piece 1 and the top of the skirt. The only parts of the garment which would give the effect of straight cut were the ends, designated 7, of strip 2, one of which would be on each side. Of this she said in her specifications: "A strip 2 also cut on the true bias is attached to piece 1 in the relative position shown in the drawings. By its peculiar cut, when sewn in conjunction with piece 1, the bias center completes the form conforming idea over the bust and at the same time presents a segment of material 7 at each outer edge which falls on the straight of the material at either side, to which segment the weight of the large section of the skirt is hung. This eliminates the tendency to sag at the sides." Thus Monroe's garment was subject to the disadvantages of all bias cut with such exception as the comparative inelasticity of the ends of strip 2 gave to the support of the skirt, which was still subject to whatever sagging and distortion its bias cut would permit.

The nearest approach to anticipation is found in the patent granted to Hennessy, No. 2,059,865. This was entirely cut on the bias except for two narrow panels in what she called the bodice. The ends of the front panel 11 and of the back panel 14 were stitched together so as to form a continuous band around the garment. Hennessy stated in her specifications that "The panels 11 and 14 are formed of inelastic material and are not stretchable in any direction, while the remaining panels at the front and rear are stretchable circumferentially in a similar manner to the skirt section 2. The panel 11 is intended to fit across the center at the breast when the garment is in use and the natural downward pull caused by the fit of the garment will cause the panels 10 and 12 at the front to conform to the shape of the body above and below the breast while similar results are secured at the back, that is, the elastic sections will cause the garment to conform itself to the shape of the back." Though Hennessy is not a complete anticipation of the patent in suit, for the skirt was bias cut, it does disclose how to combine bias and straight cutting in the waist section of such a garment so as to provide form fitting there without the use of special elastic insertions; and as there is no proof that the garment could not be worn we must assume that it could be put on and taken off without the use of either elastic or of gussets, for it had none. It did have the equivalent of Teamer's bias cut belt portion below panels 11 and 14. In that part of the garment panels 10 at the front and 13 at the rear were entirely cut on the bias, and when sewed together extended entirely around the slip just as does the belt portion of Teamer. In that place panels 10 and 13 performed the same function that the belt

portion performs in Teamer, and did so for the same reason, i. e., because they were cut on the bias and ran entirely around the garment. So far as the waist portion of Teamer is concerned there is substantially the same combination of bias cut and straight material which brings about the same result, and consequently the manner of achievement is substantially the same. That is not a departure from the old amounting to invention. Union Paper-Bag Mach. Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935; Typewriters Hilliardized, Inc., v. Corona Typewriter Co., 2 Cir., 43 F.2d 961, 963. Teamer differed in this respect from Hennessy only as one designer might choose to use parts of different sizes and shapes to do the same thing in the same way.

Nor was it the act of an inventor to attach a straight cut skirt to such a waist portion instead of a bias cut skirt. That, too, was but a matter of choice, and was in effect but the substitution of one well known type of skirt material for another also well known. It was not enough to make the patent valid. Kemper-Thomas Co. v. J. P. Gordon Co., 6 Cir., 67 F.2d 478. Since the patent is invalid we say nothing about infringement.

Judgment affirmed.