## STANDARD PATENT PROCESS CORPORATION v. ENDICOTT JOHNSON CORPORATION.

### Civ. No. 1340.

District Court, N. D. New York.

Feb. 5, 1948.

704

Roy C. Hackley, Jr., of Washington, D. C. (Charles E. Nichols, of Albany, N. Y., of counsel), for plaintiff.

Howard A. Swartwood, of Endicott, N. Y. (Stephen H. Philbin and William J. Barnes, both of New York City, of counsel), for defendant.

BRENNAN, District Judge.

This is essentially a patent infringement action. The issues of infringement, validity and laches are raised by the answer of the defendant.

The complaint contains a cause of action arising out of the alleged breach of a confidential disclosure which related to the process covered by plaintiff's patents. That issue was tried, and no serious contention is made that such cause of action was established. It was substantially abandoned at the close of the case. Such cause of action was not proved and same is dismissed upon the merits.

The complaint charges the infringement of four patents owned by the plaintiff. No evidence was offered to show the infringement of the fourth Conant patent, No. 2,-032,471, and the claim of such infringement was abandoned upon the trial.

There remains, therefore, to be decided the issues herein insofar as they involve three patents issued upon the applications of Leon B. Conant and assigned to the plaintiff herein. Such patents are referred to upon the trial and herin as "Conant patents, No. 1,719,101, issued July 2, 1929, No. 1,-769,943, issued July 8, 1930, No. 1,787,145, issued December 30, 1930". Each of these patents relate to the process of vulcanizing rubber to leather, and, following the procedure adopted upon the trial and in the briefs, will be referred to as Patents "1", "2" and "3", in the order of their issuance.

It would seem to be the orderly procedure to determine first what is taught by the patents involved herein because such determination is necessary to the determination of both validity and infringement.

The words "vulcanize" or "vulcanization" imply the treatment of raw or crude rubber with sulphur or one of its compounds; thus producing commercially useful rubber. This is an old process and it is not claimed that the Conant patents cover same. As the words are used in the Conant patents their obvious meaning is the creation of a bond or union between crude or raw rubber and tanned leather during the process in which the rubber is made commercially useful.

The Conant patents are process patents. Their purpose is to secure the bond or union above referred to. It is indicated that the problem or difficulty which they seek to overcome is to avoid the injury to the leather which it is claimed occurs when the leather is exposed to the heat of vulcanization which is normally 260 to 300 degrees Fahrenheit. Such damage is referred to as "burning" or "brittleness";

Conant patent No. 1 (1,719,101) teaches that the problem of the damage to the leather during the vulcanization process may be avoided by pre-heating the leather to the same temperature as that employed in vulcanization, and while so heated assembling the rubber therewith and subjecting the same to the heat and pressure of vulcanization; the theory being that by the pre-heating process the pores of the leather are so opened as to allow the ready escape of rubber vapors during the process of vulcanization.

Conant patent No. 2 (1,769,943) adopts the pre-heating of the leather as referred to in No. 1, but adds to the process the additional requirement that the leather be dried or dehydrated at a moderate temperature prior to the process of pre-heating. The apparent purpose of the improvement disclosed in this patent is the elimination of the moisture content of the leather, so that the pre-heating process described in the first patent may act uniformly thereon and without damage to the leather fibres.

Conant patent No. 3 (1,787,145) adds to the process referred to in patents Nos. 1 and

2 the additional feature of coating the dried, pre-heated leather with a cement, and uniting the cement coated leather with the rubber, and subjecting same to the pressure and heat of the vulcanizing process; the purpose of which is to obtain a firm union between the rubber and leather during the process of vulcanization.

A summary of the process disclosed by the three patents is that in order to obtain a firm union between crude rubber and leather the moisture should be eliminated from the leather by a drying process. The leather should be gradually pre-heated so as to obtain the body heat of hot vulcanization. The leather then should be coated with a cement, then united or assembled with the rubber or rubber composition, and subjected to the process of vulcanization.

The defendant is a manufacturer of footwear, among which are items for the most part consisting of tennis and athletic shoes, which contain a leather insole, which is united to a rubber or rubber composition outsole. The leather used is known as a "flesh split" which is a particular part of a hide, porous in its texture, and only a small fraction of an inch thick. The split is chrome tanned (as distinguished from bark tanned), and is subjected to a second chrome tanning process. Its process of manufacture is not complicated, and is depicted by a chart which shows the steps taken from the beginning to the end of the manufacturing process. The process may be summarized by stating that at the beginning of the operation the leather insole is united or assembled with a similar sized and shaped piece of rubber or "rag stock" which has been coated with a cement. This assembly is made in room temperature. The completed insole with the leather portion so placed as to come in contact with the foot of the wearer is placed upon a last, and other portions of the shoe added thereto by the use of a cement which contains a solvent that must be evaporated before the subjection of the shoe to the heat of vulcanization. This evaporation takes place in the open air. Its rapidity is governed by the moisture content of the air, so that a dryer is occasionally used on humid days. The heated air does not exceed 120 degrees Fahrenheit. No particular significance is attached to the dryer or drying process in this litigation, and further discussion of same is unnecessary.

Additional portions of the shoe are then added, and as a completed article the shoe reaches the vulcanizer.

The vulcanizing machines are the ordinary type and are essentially ovens, cylindrical in shape with a diameter of seven feet and a length of either twenty or forty feet. They contain steam pipes which furnish the heat to the desired temperature, and the desired air pressure is mechanically produced therein. The air under pressure is also mechanically circulated therein during the process. The shoes are inserted through the open door of the vulcanizer. Footwear composed either entirely of rubber or rubber with leather are run on trucks into the oven vulcanizer. As they are placed therein they are at room temperature, and the vulcanizer is ordinarily at a temperature of 180 degrees Fahrenheit, because the interior thereof naturally is cooled during the process of opening the doors, removing the vulcanized shoes, and placing additional shoes therein to be vulcanized. The proper pressure is provided for, the air circulating system is put in operation, and the temperature in the vulcanizer is raised to about 260 degrees Fah. which is the temperature used by the defendant in the process of ordinary hot vulcanization. It takes about forty-five minutes to raise the heat in the vulcanizer to the required temperature.

The different steps in the process of the defendant do not warrant a more detailed discussion. It is the claim of the plaintiff that infringement occurs during the process of vulcanization, in that the leather and rubber of the insole united by a cement is subjected to a drying, pre-heating process, during the period in which the shoe is subjected to the gradual increase of heat in the vulcanizer from 180° to 260°, which is the vulcanizing temperature.

To constitute infringement there must be a substantial identity of process. Cornell v. Chase Brass & Copper Co., 2 Cir., 142 F.2d 157. It is not enough to show that the defendant reached the same result; to-wit, a firm union between the leather and vulcanized rubber. It must be shown that

such result was reached by the same or substantially the same means to constitute infringement. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537 at 569, 18 S.Ct. 707, 42 L.Ed. 1136.

It would seem apparent that the basic idea of the Conant patents is the idea of pre-heating the leather to the temperature required in vulcanization, and maintaining the leather at such temperature until it is united with the rubber which is to be vulcanized. The whole purpose of the pre-heating idea is to condition the leather so that it will accommodate itself to the heat of vulcanization without damage. Defendant's process eliminates the element of pre-heating. The pores of the leather are not opened by heating prior to its assembly with the rubber. They are both subjected to the same heat at the same time, which is contrary to the basic idea of the Conant patents.

The plaintiff urges that in any event infringement may be found here upon the basis of equivalents. This contention is based upon the supposition that the heat in the vulcanizer could be raised instantaneously from 180° to 260°. There is no evidence in the record that defendant's process of bringing up the heat in the vulcanizer gradually is other than the ordinary method in use in defendant's plant and in the plants of other manufacturers.

Comparison of the time required to complete the vulcanizing process in different vulcanizers does not support the plaintiff's contention. Rebuilt machines which provide a more rapid circulation of air when compared with the machines actually in use afford no basis for any positive finding.

█ It is plaintiff's burden to establish that the gradual rise in temperature obtained by the defendant is the equivalent of his teachings. Suspicion that the temperature could be raised faster is not enough, especially in view of the evidence that the gradual raise of temperature in the large oven follows the usual course, and defendant knows of no other method of accomplishing the desired result; viz., the temperature required for vulcanization.

It may be inferred that during such period moisture in the leather is at least in some degree eliminated, and the leather in a somewhat gradual manner reaches vulcanizing heat.

█ The words "pre-heat" or "pre-heating" can have no hidden nor double meaning. The prefix "pre" is commonly used and understood as denoting a priority of time or place. In the Conant patents two types of material are dealt with, to-wit, leather and rubber. The leather alone is pre-heated, in the Conant teachings. Pre-heating as used by Conant in his discussion of materials can only mean that the leather is heated prior in time to the heating of the rubber. Plaintiff now urges that the word is used as indicating only that the leather must be heat energized prior to its exposure to the heat of vulcanization and contemplates and includes the heat-energizing of the rubber at the same time. Such an interpretation is contrary to the plain language of the patents themselves, and contrary to the theory that the process opens the pores of the leather so as to allow the free exit of escaping vapors or gases freed from the rubber by the heat action. If Plaintiff's contention be accepted, then the patents in their present form are unnecessary. All that is needed to describe the process is to provide, as in the cook's recipe, that the leather be baked in a slow oven.

█ Even if the doctrine of equivalents were to be applied here, the Conant patents clearly regard as essential a distinct difference in temperature or heat energy between the leather and the rubber when they are subjected to vulcanizing temperature. Defendant's process subjects both rubber and leather to vulcanizing heat when they are both of the same temperature. This is contrary to Conant's teaching or any equivalent thereof. The Conant's patents are not infringed.

Defendant's contention that it relies upon the union of the leather and rubber as obtained by the use of cement, rather than any union between the materials obtained in the vulcanization process, has not been overlooked. The record is barren as to evidence showing the effect of vulcanization upon the union provided by the use of the cement. In deciding this case the Court has, however, indulged in the inference

(whether or not it is justified) that such union is strengthened by the vulcanizing process.

 In the consideration of the issues in this action the admonition of the Supreme Court as to the better practice for this Court to follow in patent litigation, where both validity and infringement are involved, has not been overlooked. Sinclair Co. v. Interchemical Corporation, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644. Here, however, the patents involved have expired. There is no evidence of the use of same commercially, and there is no evidence of pending or threatened litigation. The "public importance" referred to in the Sinclair case, therefore, does not exist; neither do the patents longer remain in the art as a "scarecrow". Addressograph–Multigraph Corporation v. Cooper, 2 Cir., 156 F.2d 483. The determination fo the question of validity under the circumstances of this case approaches an advisory opinion, or the determination of a controversy not necessary to the decision which the passage of time has rendered moot.

The complaint is dismissed.