## CONSOLIDATED CAR HEATING CO., Inc. v. CHROME–GOLD ALLOYS CORP. et al.

### Civ. No. 3841.

United States District Court
N. D. New York.

Submitted Nov. 25, 1952.

Decided Dec. 2, 1952.

Andros & Smith, Albany, N. Y., for plaintiff.

Wiswall, Wood, Olson & Schoonmaker, Albany, N. Y. (Chester Wood, Albany, N. Y., and Karl W. Flocks, Washington, D. C., of counsel), for defendants.

BRENNAN, Chief Judge.

This is the usual patent infringement action with the usual prayer for relief.

The answer denies the validity and infringement of the patent in suit. The answer of Chrome-Gold Alloys Sales, Inc., also alleges as a counterclaim a cause of action against the plaintiff based upon unfair competition, which is denied in plaintiff's reply. No evidence was offered on the trial to support the allegations of the counterclaim. It is deemed abandoned and is dismissed for failure of proof.

The plaintiff is a corporation having an office for the transaction of business at Albany, New York, and is the owner of United States Patent No. 2,072,911, issued March 9, 1937, and referred to throughout the trial as the "Touceda" patent. As far as pertinent here its activities involve the manufacture and sale of an alloy known as "Ticonium", the principal use of which is in the field of dentistry, and particularly in the casting and manufacture of dentures. The product manufactured under the Touceda patent has been used by the public about sixteen years, and the plaintiff has granted some two hundred fifty licenses for the use of the patent. The patent in suit has never before been questioned, although the product is subject to business competition.

Defendant Chrome-Gold Alloys, Inc., is a corporation organized about 1948. It is engaged in the manufacture of the alleged infringing product at Averill Park, New York, with an office at Albany, New York. Defendant Chrome-Gold Alloys Sales, Inc., is a corporation organized in 1950. It has an exclusive sales agreement whereby it sells the product of the co-defendant, and it occupies an office with the manufacturing company at Albany, New York. Two individuals are officers of both companies. The defendants manufacture and sell an alloy known as "Chrome-Gold". Its principal use is as a casting alloy in the manufacture of dentures and is, therefore, in direct competition with the plaintiff's product Ticonium.

Concisely stated, it is the claim of plaintiff that the defendant's product, known as "Chrome-Gold", contains components combined in such a manner as to infringe the patent under which its product Ticonium is manufactured.

The controversy here which involves the validity and infringement of the Touceda patent is reduced by the limitation of plaintiff's contention that only Claim 1 of the Touceda patent is infringed. The issues here are concise and narrow, although as is usual in this type, a considerable amount of evidence was offered and voluminous briefs are submitted. The consideration of the case will then begin with an analysis of the Touceda patent, and especially claim I thereof.

The patent discloses an alloy, the essential ingredients of which are:

| Chromium | 10.0 to 35% |
|---|---|
| Nickel | 20.0 to 50% |
| Cobalt | 20.0 to 50% |
| Beryllium | 0.1 to 5% |
| Molybdenum | 0.1 to 8% |
| Nickel and cobalt | 55.0 to 80% |

The end result is obtained by using the well known chromium-nickel-cobalt alloy and adding beryllium thereto; thereby producing an alloy which substantially changes the characteristics of the chromium-nickel-cobalt alloy in ten respects. Without discussing these changes, it is perhaps sufficient to say that the principal distinguishing characteristics proven upon the trial

are: (1) a higher yield point; (2) a greater fluidity at casting temperatures, and (3) a cleaner surface in the "as cast" condition. These three characteristics are obtained by the addition of beryllium, and, as stated by one of the witnesses, the use of beryllium is the key to the Touceda patent.

Approaching the problem before us here, it would seem logical first to consider the contention that the Touceda patent is invalid. Wabash Corp. v. Ross Electric Corp., 2 Cir., 187 F.2d 577 at page 581. An invalid patent can not be infringed. Concisely stated, the defendant contends that the Touceda patent at best consists only of an advancement of the art such as would normally be expected as the result of the knowledge and labor of those skilled therein. It is also contended that the results obtained by Touceda were disclosed by the prior art and in documents and writings.

■ The approach to the consideration of these contentions is made with a realization that the burden of proof to establish invalidity is upon the party alleging it. The burden placed upon the defendant here is not a light one. The measure of proof required has been variously stated, ranging from a preponderance of evidence to that of beyond a reasonable doubt. It would seem at least that the defendant is required to produce convincing evidence of invalidity before this Court is justified in making such a finding. Radio Corp. v. Radio Engineering Laboratories, 293 U.S. 1 at pages 7, 8, 55 S.Ct. 928, 79 L.Ed. 163; Crosley Corp. v. Westinghouse, 3 Cir., 152 F.2d 895 at page 904.

■■ The issuance of the patent itself is prima facie evidence of its validity. Custom Undergarment Corp. v. R. H. Macy & Co., 2 Cir., 140 F.2d 197. While invention is the ultimate question to be decided, Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, commercial success utility and imitation may well add strength to such prima facie showing. Schering Corp. v. Gilbert, 2 Cir., 153 F.2d 428 at page 432. As a practical matter the fact that the patent has remained unchallenged for a period equal to about 90% of its legal life is not without significance.

■ Another well known legal principle of patent law must also be considered; namely, that a combination of known or old elements to be patentable must produce a new result. "—unusual or surprising consequences—" is the test of invention where such a combination is the basis thereof. Great A. and P. Co. v. Supermarket Equipment Corp., supra, 340 U.S. at page 152, 71 S.Ct. 127.

This Court is not unmindful of the tendency of courts to raise the standard of originality necessary for an invention. Foxboro Co. v. Taylor Instrument Companies, 2 Cir., 157 F.2d 226. The point where the skill of the art ends and inventive genius shows itself appears to be variable with the knowledge and experience of the judge making the decision in the particular field in which the patent falls. The problem is more difficult in the chemical or metallurgical field than in the mechanical, since mechanical results are more easily discerned by the untrained eye, than those which must be measured by the skill of a metallurgist or chemist.

The evidence discloses that the Touceda patent would produce an alloy especially useful in the casting of dentures which have peculiar requirements in their practical use. The point at which the denture product would recover its shape without deformity after the application of stress is higher than that which could be obtained without the use of beryllium. Its fluidity at casting temperature is greater, insuring a completely filled mold. Its surface, as cast, or after the investment material has been removed is cleaner, thereby requiring less polishing and a lessening of the danger of permanent harm or distortion to the casting. The unusual or surprising results obtained by Touceda, which others had overlooked, were that beryllium when used in the combination described was more than a deoxidizing or hardening agent. It was an essential element in the resulting alloy which produced in the product desirable qualities theretofore unattainable.

We must examine the condition of the prior art to determine whether or not the use of beryllium and the results obtained thereby were disclosed therein prior to Touceda. No discussion appears to be necessary as to the combination of chromium-nickel-cobalt and molybdenum since the elements were well known and their functions were apparently well understood. Beryllium, however, was a comparatively new element. Its existence was known for many years, but its practical uses appear to have been less known or understood prior to the 20's. It can be said that it is a European product and became available commercially about 1930. It was known as a deoxidizing and hardening element.

▆▆▆▆ The American patent relied upon by the defendant as anticipating or disclosing the use of beryllium is the Chesterfield Patent No. 1,698,935, issued in 1929. In its language it does not refer to beryllium. It does, however, disclose an alloy composed of chromium, nickel, cobalt and molybdenum to which should be added a *hardening* element. The patent itself relates particularly to the production of high-speed cutting tools. There were also cited three British patents, issued in 1932 and 1934; two French, issued in 1933, and one Swiss patent, issued in 1934, which defendant claims anticipate or disclose the use of beryllium in alloys similar to the basic alloy used by Touceda. An examination of these patents, or at least some of them, do disclose that beryllium may be used as a deoxidizing or hardening agent. They do not, like Touceda, assume to teach that beryllium is an essential element in the alloy. These patents are for the most part broad in their language. Their weight as an anticipation is stated in a quotation from Carson v. American Smelting & Refining Co., 9 Cir., 4 F.2d 463 at page 465:

"A foreign patent is to be measured as anticipatory, not by what might have been made out of it, but by what is clearly and definitely expressed in it. An American patent is not anticipated by a prior foreign patent, unless the latter exhibits the invention in such full, clear, and exact terms as to enable any person skilled in the art to practice it without the necessity of making experiments."

▆▆▆▆ The Court can not take any of the patents above referred to and read them upon the claims of the Touceda patent. The conclusion of Professor Mc-Kay that he could construct the Touceda alloy upon the disclosures made in the prior art is not convincing. Such demonstrations are fortified by hindsight and by the knowledge of the expanded use of beryllium in the metallurgical field during the last sixteen years. The disclosures of the prior art patents are to be judged in the light of the knowledge, experience and know-how of the time of Touceda's patent.

"Upon looking back after a discovery is made, it is usually not difficult to find possible analogies in the prior art, for it is axiomatic that progress is always step by step." Union Carbide & Carbon Corp. v. Stuart Laboratories, 3 Cir., 194 F.2d 823 at page 826.

The use by Touceda of beryllium was more than as a deoxidizing or hardening agent. Better deoxidizing agents were well known in Touceda's time. Better and cheaper hardening agents were also well known. There was more than purification and hardening that Touceda wanted. It was a higher yield point and a greater fluidity. Hardening might have been accomplished at a sacrifice to brittleness. Purification might have been obtained at a sacrifice to fluidity. The disclosure of prior art may not be gathered piecemeal from prior public disclosure and then combined in such a manner as to destroy subsequent invention.

"No doctrine of the patent law is better established than that a prior patent or other publication to be an anticipation must bear within its four corners adequate directions for the practice of the patent invalidated. If the earlier disclosure offers no more than a starting point for further experiments, if its teaching

will sometimes succeed and sometimes fail, if it does not inform the art without more how to practice the new invention, it has not correspondingly enriched the store of common knowledge, and it is not an anticipation." Dewey & Almy Chemical Co. v. Mimex Co., 2 Cir., 124 F.2d 986 at page 999.

The defendant has not borne the burden imposed by law upon him, and the Touceda patent is held to be valid.

We turn now to the defendant's alleged infringing product. The undisputed analysis thereof shows that it was composed of the following elements:

| | |
|---|---|
| Chromium | 24.4% |
| Nickel | 33.8% |
| Cobalt | 32.0% |
| Molybdenum | 4.9% |
| Gold | 4.85% |
| Beryllium | 0.95% |
| Manganese | 0.60% |
| Silicon | 0.47% |

It is conceded that all of the elements contained in the Touceda product within the percentage range described in the patent appear in defendant's product. The addition of a small amount of manganese and silicon appears to be of no moment, since they are permissible additions within certain limits as specified in the Touceda patent, and defendant relies upon the addition of the gold element to avoid infringement.

A considerable amount of expert evidence was received as to the effect of this additional element on the alloy, both in its precast and as cast condition. No doubt it affected the color of the resulting alloy and finished product. It produced an alloy whose properties, such as specific gravity and yield point, differ somewhat from the same properties found in the Touceda alloy. Such differences seem to be unessential, and the debate as to the desirability of the high yield point of the Touceda product as compared to the lower yield point of the chrome-gold product

need not be decided, because at most the addition of gold would only be an improvement in the Touceda patent and would not avoid infringement. Union Carbide & Carbon Corp. v. Stuart Laboratories, supra, 194 F.2d at page 829.

The test of infringement has been variously stated in judicial precedents. Substantial identity of device or process is embodied in these tests. Nachman Spring Filled Corp. v. Spring Product Corp., 2 Cir., 68 F.2d 829; Standard Patent Process Corp. v. Endicott Johnson Corp., D.C., 76 F.Supp. 703. Here it appears plain that Chrome-Gold has used the essential elements described in the Touceda patent within the ranges therein described. An unessential element has been added; namely, gold. The process does not thereby lose its substantial identity to that of the Touceda patent. In this instance the results obtained are also substantially the same.

Infringement is not escaped by the claim that an essential element in the Touceda patent, namely, beryllium, is used only as a deoxidizing agent in the Chrome-Gold product. True, it may serve such purpose. However, the mere fact that no instance can be given where beryllium is commercially used as a deoxidizing agent, except by the alleged infringer, taken together with the cost thereof, and the fact that it is not rated as the best deoxidizer in the field, is a strong indication that its actual use is to obtain the properties in the resulting product described by Touceda.

In one of the briefs filed by the defendant it is urged that plaintiff is estopped from asserting infringement. This contention seems to be based upon the contents of the file wrapper record which was received in evidence. The contention is not clear, but has not been overlooked. It is sufficient to state that there is no evidence to support the contention.

The plaintiff is entitled to judgment in accordance with the decision herein, and the prayer of the complaint.