DOUGHBOY INDUSTRIES, Inc. et al. v.
GOFF et al.

Civ. No. 1853.

United States District Court
D. Minnesota, Third Division.

Feb. 10, 1953.

———◆——— ]

A. Yates Dowell, Washington, D. C., and Doar & Knowles, New Richmond, Wis., for plaintiffs.

Williamson, Williamson, Schroeder & Adams, Minneapolis, Minn., and Lewis L. Drill, St. Paul, Minn., for defendants.

DONOVAN, District Judge.

This is a patent and trade-mark infringement suit. Plaintiff Doughboy Industries, Inc., alleged infringement and breach of contract, with the accompanying request for an accounting and injunctive relief. By stipulation, Harris Trust & Savings Bank of Chicago, Illinois, and W. H. Milsted, as trustees, were joined as parties plaintiff herein. At the opening of the trial defendants announced that they conceded

1. Ordinarily, as guardian of the public interest in patents, the Court should, of its own motion, consider the question of validity. Sinclair & Carroll Co., Inc. v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. There is no contest on the question of validity; hence the Court accepts defendants' concession in that respect. Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Royal Typewriter Co. v. Remington Rand, Inc., 2 Cir., 168 F.2d 691. See also Irvin v. Buick Motor Co., 8 Cir., 88 F.2d 947.

2. The file wrapper for patent 2,387,664 introduced in evidence as plaintiffs' exhibit 3, discloses that the patent issued only after it had been twice rejected.

the validity of the patent upon which this suit is based.[1]

There is little, if any, dispute about the facts. For convenience, plaintiffs' patent will be referred to by that name. The alleged infringing patent will be referred to as the accused patent.

Defendant Kubista was the inventor of plaintiffs' patent, described as "a fount for poultry", and also of the accused patent, described as "a drinking fount for poultry." On December 21, 1944, Kubista entered into an agreement with plaintiff Doughboy Industries, Inc., whereby he transferred title to said plaintiff of patent numbered 2,387,-644, and further agreed "not to manufacture or sell any other similar or competitive type of poultry water founts." On January 22, 1946, Design No. 143,604 was issued to Kubista, and on February 14, 1946, this was assigned to plaintiff Doughboy Industries, Inc. Following this, on March 25, 1946, Kubista made application for the issuance of the accused patent, numbered 2,501,-727,[2] which was assigned by Kubista to defendant Miller Manufacturing Company.

A detailed description of all claims of the patentee would prolong this discussion beyond reasonable limits, and would serve no useful purpose. An intelligent understanding of the claims made for the patents in suit can best be had by a comparison of the drawings and claim No. 1 in plaintiffs' patent and the accused patent, reproduced herein as follows:

The patent office examined the claims thoroughly and after a careful and lengthy comparison with the prior art, allowed the patent with three claims. However, because of its very nature it is an improvement pattern, and the scope of its claims is narrow. Penmac Corporation v. Esterbrook Steel Pen Mfg. Co., 2 Cir., 108 F.2d 695. The accused device is a poultry fountain which corresponds to a later patent issued to Kubista. The fact that both patents were granted to the same person, plus the fact that the second invention came after Kubista had assigned all his rights under the first to plaintiff, make it incumbent on the Court to closely scrutinize the accused patent 2,501,727 for infringement on the first. Freeman v. Altvater, 8 Cir., 66 F.2d 506.

Oct 23, 1945     C L KUBISTA     2,387,664

FOUNT FOR POULTRY AND OTHER DOMESTIC ANIMALS

Filed Aug 25 1943

Inventor
*Charles L. Kubista*
By *Williamson & Williamson*
*Attorneys*

What I claim is:

1. A fount for poultry and domestic animals having in combination an open top receptacle for containing liquid, a rigidly mounted conduit extending vertically from the lower portion of said receptacle and terminating at its upper end at a point above the high liquid level of said receptacle and having means at its lower end for connection with a source of liquid supply, a normally closed, vertically reciprocable valve mounted in said conduit and having a stem projecting somewhat beyond the upper end of said conduit, a weighted tubular member slidably mounted upon said conduit and having a valve-operating element aligned with and spaced from but adapted to engage said projecting stem, a float member consisting only of an annular skirt connected with said weighted tubular member and surrounding the same and said conduit, said weighted tubular member having laterally extending apertures in the upper portion thereof for the discharge of liquid into the space between said weighted tubular member and said float member, and the float member deflecting downwardly the discharged liquid.

March 28, 1950     C. L. KUBISTA     2,501,727

DRINKING FOUNT FOR POULTRY

Filed March 25, 1946

FIG. 1

FIG. 2

FIG. 3

What I claim is:

1. A fount for poultry and domestic animals having in combination a depending supporting conduit having a discharge opening in the lower portion thereof, a valve of the pneumatic tire type mounted in the lower end of said conduit and having a stem projecting from the lower extremity of said conduit, an open-topped receptacle having an upstanding conduit-embracing mounting fixedly secured at one end to the bottom of the receptacle, said mounting having a bearing surface for telescoping over and loosely fitting the depending portion of said conduit, said conduit having a coil spring abutment means disposed externally above the lower end thereof, and said mounting adjacent its upper end having a conduit surrounding portion forming coil spring abutment means, a coil spring surrounding said conduit disposed within said mounting and interposed between said pair of spring abutment means, said spring being of a tension to overcome the weight of said receptacle when the latter is empty, at which time upward displacement of said mounting will be effected to open said valve, the weight of a predetermined quantity of accumulated liquid in said receptacle being adapted to react to compress said coil spring and to axially lower said mounting relative to said conduit to relieve upward pressure from said valve stem.

INVENTOR
CHARLES L. KUBISTA
BY
*Williamson & Williamson*
ATTORNEYS

362

It is undisputed that the first mechanical patent, 2,387,664 and design patent 143,604, are owned by plaintiff Doughboy Industries, Inc., and that subsequent to the trial of the instant case they were assigned as security to Harris Trust and Savings Bank of Chicago, Illinois, and W. H. Milsted, as trustees, and that the record title of the accused patent 2,501,727 is in the name of defendant Miller Manufacturing Company. It is undisputed that the contract which plaintiffs claim was breached was duly entered into and executed by defendant Charles L. Kubista on December 21, 1944.

Plaintiffs contend the accused patent is within the scope of their patent 2,387,664, and that it constitutes an infringement thereon. They further contend that under the terms of said contract Kubista agreed "not to manufacture or sell any other similar or competitive type of poultry water founts", and that the sale of the accused patent by defendant Kubista violates the letter and spirit of that contract.

Plaintiffs ask the Court's order:

(1) declaring the accused patent an infringement, demanding injunctive relief and for an accounting and damages; and

(2) for damages for breach of contract.[3]

Is plaintiffs' patent infringed by the accused patent? Plaintiffs have the burden of proving infringement. Reference to the claims for plaintiffs' patent makes obvious that it is an improvement patent which includes a combination of elements, and among which are a number already known and disclosed by the prior art. The doctrine of equivalents is applicable to improvement patents, although in a much more limited manner than the broader range extending to primary or generic patents.[4]

The range of equivalents available to plaintiffs' patent is a narrow one. It must not include anything that is not substantially identical with the means described in the patent. Or, as clearly stated by the Court of Appeals for the Eighth Circuit, "to constitute infringement the accused device must, in a patent sense, accomplish the same result and by the same means and by the same method of operation" as that of plaintiffs' patent.[5] If any one of these is lacking, there is no infringement.[6]

The parts common to plaintiffs' patent and the accused patent were known to the prior art, and do not of themselves constitute invention. In combination with other parts, can it be said that they amount to infringement? The accused device differs in form and function from that of plaintiffs. It cannot be said that the accused device does substantially the same thing in substantially the same manner to accomplish the same result by the same or equivalent means. Contrary to plaintiffs' contention, I am not persuaded that the accused device is so similar to plaintiffs' patent in construction and appearance as to mislead the public into thinking it a product of plaintiffs'. The test is identity in appearance by and appropriation of novelty in the accused device which distinguishes the invention in plaintiffs' patent from the prior art.[7]

In my opinion the accused device is not the result of a situation arising out of a reversal of parts to produce the same function. Comparison of the reproduction of the drawings and claims, supra, makes this obvious. The two products are so manifestly different in function, appearance and operation as to make most difficult the conclusion that a prospective purchaser could possibly confuse the two. The difference is substantial, and not merely colorable. Evaluating the evidence, I cannot say the ac-

3. Paragraph 6 of the Complaint charges that defendants
   "* * * are jointly infringing * * * and have aided, abetted and conspired * * * to infringe * * * by joint and several acts * * *."

4. G. H. Packwood Mfg. Co. v. St. Louis Janitor Supply Co., 8 Cir., 115 F.2d 958.

5. General Motors Corporation v. Kesling, 8 Cir., 164 F.2d 824, 833.

6. Montgomery Ward & Co. v. Clair, 8 Cir., 123 F.2d 878, 881; Electric Protection Co. v. American Bank Protection Co., 8 Cir., 184 F. 916, 923.

7. Sears, Roebuck & Co. v. Talge, 8 Cir., 140 F.2d 395.

cused device infringes plaintiffs' patent and plaintiffs have not sustained the burden of proof in this respect.

The next question is whether or not Kubista committed a breach of his contract with plaintiff Doughboy Industries, Inc., by assigning the accused patent to Miller Manufacturing Company. The clause relied on by plaintiffs prohibits manufacture and sale by Kubista. In this connection plaintiffs charge ·defendants Miller Manufacturing Company and John W. Goff with inducement to breach the contracts. Certainly the required preponderance of the evidence does not support the ·claim of plaintiffs that Kubista was induced by any of the defendants to breach the contract. There is no evidence of malice, express or implied, that would tend to induce Kubista to violate the terms of the contract into which he entered.

■ The grant of a patent creates a prima facie presumption of validity.[8] The particular part of the contract with which we are here concerned has to do with the sale of a "similar or competitive type of poultry water founts." Nothing is said in the contract limiting Kubista's right to assign the accused patent. Not too broad in its all-inclusive and prohibitive features, the contract is commendably succinct and concise. Counsel of record in the case at bar disclaim authorship of the contract in question. As noted in the margin, supra, plain-

tiffs charge that the acts of defendants leading to the assignment of the accused patent amounted to a conspiracy. Counsel for the defendants advised and represented Kubista in the obtaining of plaintiffs' and the accused patent.[9] The preponderance of the evidence required to support plaintiffs' charge that the assignment was bottomed on conspiracy between defendants, which thereby induced Kubista to breach said contract, falls short of that required by law. Evidence of concerted action or by agreement between defendants to induce Kubista to breach his contract and make the assignment of the accused patent is lacking to such an extent as not to permit a finding or conclusion of such common design or of even tacit understanding between defendants to that end.

■ The instant case is unusual in that counsel devote so much of their argument to needless criticism of each other. The case was well tried by specialists, who have presented their points and authorities in lengthy briefs evidencing skillful professional ability. The Court has given much thought and consideration to all that counsel have submitted in support of their contentions, and is of the opinion, as indicated, supra, that the accused patent does not infringe plaintiffs' patent. The Court is further of the opinion that the contract between plaintiff Doughboy Industries, Inc., and Kubista has not been breached.

8. Mitchell v. Tilghman, 19 Wall. 287, 86 U. S. 287, 290, 22 L.Ed. 125; Custom Undergarment Corporation v. R. H. Macy & Co., Inc., 2 Cir., 140 F.2d 197.

9. Plaintiffs' counsel argue that by reason of such intimate association with both patents:
"* * * it was incumbent upon attorneys * * * to obtain all the protection possible in the first Kubista application regardless of the ownership thereof. This is the duty of the prosecutor of every application for patent filed in the Patent Office on behalf of a client. In this particular instance the duty was greater because attorneys Williamson & Williamson were attorneys for Doughboy in the prosecution of the application and the resultant patent obtained by assignment from Kubista, attorneys Williamson & Williamson later attempting, in the prosecution of the second application, to

take advantage of any loopholes for which they were responsible in the prosecution of the first application.
*     *     *     *     *
"Plaintiff [Doughboy] contends that due to Kubista's intimate connection with the sale of his patent and the manufacture and sale of the infringing fountain thereof, all of the defendants are in the same situation, namely liable to Doughboy for their conduct. Kubista has breached the contract and infringed the patent rights which he transferred to Doughboy.
*     *     *     *     *
"It is clear that on advice of counsel all the defendants are in accord that the contract does not prohibit the manufacture and sale of similar and competitive poultry fountains by any of them except Kubista, and accordingly, plaintiff has no rights to be considered."

Defendants may submit findings of fact, conclusions of law, order for and form of judgment, on notice to plaintiffs.

The plaintiffs are allowed an exception.